# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| DAVID PULKRABEK, BARBARA RAINEY, ANDREW SCHWAB, WESLEY DICKMAN, and WHITNEY DICKMAN, on their own behalf and on behalf of a class of similarly situated individuals, |  |
|  | Case No. 2:20-cv-00036-JRG-RSP |
| Plaintiffs, |  |
| v. | **ORAL ARGUMENT REQUESTED** |
| TOYOTA MOTOR SALES, U.S.A., INC., and TOYOTA MOTOR NORTH AMERICA, INC., |  |
| Defendants. |  |

## DEFENDANTS TOYOTA MOTOR SALES, U.S.A., INC. AND TOYOTA MOTOR NORTH AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, AND BRIEF IN SUPPORT

Defendants Toyota Motor Sales, U.S.A., Inc. ("TMS"), and Toyota Motor North America, Inc. ("TMNA"), hereby file their Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiffs David Pulkrabek, Barbara Rainey, Andrew Schwab, Wesley Dickman, and Whitney Dickman ("Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).

## I.     INTRODUCTION

Plaintiffs, all Missouri residents, claim that the fuel tanks of 2019 and 2020 RAV4 Hybrid vehicles (the "Subject Vehicles") are defective because, according to them, they cannot be filled to their advertised capacity or achieve consumers' desired mileage for a single tank of gas. Disappointed expectations regarding the alleged mileage range achievable by the Subject Vehicles, however, do not constitute cognizable harm under applicable law.  Specifically, Plaintiffs' failure to establish Article III standing is fatal to all of their claims because they have not alleged an actionable injury.  For example, Plaintiffs have not alleged any physical harm as a result of the alleged defect, that they were forced to replace or discontinue using their vehicles, that they attempted to sell their vehicles or received less value for them, that they personally incurred any specific out-of-pocket damages related to repairs concerning the fuel tank of their vehicles, or that they experienced (let alone suffered any harm from) the potential risk of spillage during fueling. Plaintiffs freely concede that they still own and use their vehicles and are able to achieve up to 451 miles on a single tank of gas, even with an alleged reduction in the fuel tank capacity.

At best, Plaintiffs have alleged a hypothetical injury based solely upon a speculative risk of future harm, not a concrete and particularized current injury, which is insufficient to establish the requisite Article III standing.  While Plaintiffs' lack of standing and inability to plead a

cognizable injury disposes of their entire action under Rule 12(b)(1),[1] all of their claims are legally deficient for several additional and independent reasons under Rule 12(b)(6):

*First*, Plaintiffs cannot state a claim for breach of express warranty because, accepting their allegations as true for purposes of this Motion, the FAC expressly alleges a defect in the ***design*** of the fuel tank.  The applicable TMS express warranty, however, only covers repairs needed to correct defects in "materials and workmanship," not design.  Alleged defects in design are not covered under the warranty.  Plaintiffs' thinly veiled and fleeting attempts to assert that the alleged defect here in fact relates to "materials and workmanship" also fail.  Plaintiffs do not plausibly plead the elements of a bona fide manufacturing defect; instead, their defect allegations expressly relate to the fuel tanks' inherent design.

*Second*, Plaintiffs have not pleaded a breach of implied warranty claim under Missouri law because they do not allege that their vehicles are unfit for their ordinary purpose of safe and reliable transportation.  Rather, Plaintiffs concede that they use their vehicles and are able to travel up to 451 miles on a single tank of gas.

*Third*, Plaintiffs' fraud claim under Missouri law is deficient because they have failed to plead either a specific, actionable misrepresentation, or a duty to disclose and active concealment.  Moreover, Plaintiffs' claim that TMS or TMNA knew that alleged representations about the fuel tank or fuel range were false is unsupported by any plausible factual allegations.  Thus, Plaintiffs fall far short of alleging the "who, what, when, where, and how" required under Rule 9(b) to adequately state a claim for fraud under Missouri law.  For these same reasons, Plaintiffs' claim under the Missouri Merchandising Practices Act for alleged misrepresentations and fraudulent omission / concealment likewise fails.

---

[1] Unless otherwise noted, all references to "Rule" are to the Federal Rule(s) of Civil Procedure.

*Fourth*, Plaintiffs' claim for unjust enrichment fails because they assert the existence of express warranties and plead claims thereunder.  Under Missouri law, this precludes the equitable remedy of unjust enrichment even at the pleading stage.

*Fifth*, Plaintiffs' nationwide class allegations should be dismissed because, as Missouri residents, they lack standing to represent consumers in 49 other states under their states' laws, nor can Missouri law be applied extraterritorially to consumers in those other states.

Plaintiffs have both failed to satisfy Article III standing and failed to plead essential facts to support their claims.  Accordingly, TMS and TMNA respectfully request that the Court dismiss the FAC in its entirety with prejudice.

## II.      STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule CV-7(a)(1), TMS and TMNA state that the issues to be decided by the Court in determining their request for case dispositive relief are:

    a.   Whether the Plaintiffs have sufficiently pleaded Article III standing such to confer subject matter jurisdiction over this dispute to this Court; and, if so,

    b.   Whether Plaintiffs have stated a plausible claim for relief against TMS or TMNA; and

    c.   Whether Plaintiffs are entitled to declaratory relief; and

    d.   Whether Plaintiffs' nationwide class allegations should be dismissed at the pleading stage.

## III.     ALLEGATIONS

### A.      The Alleged Defect in Certain RAV4 Hybrid Vehicles

For 2019 and 2020 Toyota RAV4 Hybrid vehicles, "Toyota redesigned the gas tank from a 'Native American papoose' shape to a 'latitudinal, saddle-shape design.'"  FAC, ¶ 31.  Plaintiffs each allege that they purchased a model year 2019 Toyota RAV4 Hybrid vehicle.  *Id.*, ¶¶ 74, 88,

105.  They allege a defect in the design of their vehicles that "does not allow the fuel tank to reach its advertised 14.5-gallon capacity."  *Id.*, ¶ 2.

Despite the alleged defect, Plaintiffs do not dispute that the Subject Vehicles have a combined Environmental Protection Agency ("EPA") mileage estimate of 40 Miles Per Gallon ("MPG").[2]  *Id.*, ¶¶ 33, 39; *id.* p. 11 n.3.  Plaintiffs further admit that, even with the alleged defect, the Subject Vehicles have a range of 418 to 451 miles for a single tank of gas.  *Id.*, ¶ 77.

### B.    Plaintiffs' Alleged Experiences with Their RAV4 Hybrid Vehicles

Plaintiffs Pulkrabek and Rainey, who are married, allege that, in August of 2019, they "saw an online advertisement for a 2019 RAV4 Hybrid listed for sale at Fowler Automotive, located in Tulsa, Oklahoma"; Pulkrabek "called the dealership from his home in Missouri and negotiated the sales price," and they purchased and picked up their vehicle.  FAC, ¶¶ 72, 74.  They claim that, prior to completing the purchase, they reviewed "multiple materials" relating to fuel tank capacity and estimated range.  *Id.* 73.  They allege that they viewed "Toyota's website" and an e-brochure, as well as a "Window sticker" and "pamphlet" they were given with the vehicle "at the time of sale."  *Id.*  Thereafter, they took their vehicle to Reliable Toyota in Missouri on three occasions to "address [an] issue [with the fuel tank]," and the "dealership replaced multiple components on the Class Vehicle and represented that it had addressed the fuel tank issue," but they were still unable to fill their tank to 14.5 gallons of fuel.  *Id.*, ¶¶ 79-80.  Sometime after January 16, 2020, "Toyota" replaced the fuel tank.  *Id.*, ¶ 83.

Plaintiff Schwab purchased his vehicle from Reliable Toyota in Missouri on October 27, 2019.  FAC, ¶ 88.  He alleges that he visited "Toyota's website" prior to purchasing the vehicle

---

[2] EPA fuel economy estimates "are based on standardized tests designed to reflect 'typical' driving conditions and driver behavior, but several factors can affect MPG significantly."  Declaration of Mark T. Clouatre, Ex. 5 (https://www.fueleconomy.gov/feg/why_differ.shtml (last visited August 12, 2020)).

and saw a representation about fuel tank capacity and estimated gas mileage; he further alleges that he received a pamphlet "at the time of purchase" and saw a stated fuel capacity on his vehicle's "Mulroney" sticker. *Id.*, ¶ 90.

Plaintiffs Wesley and Whitney Dickman, who are married, purchased their vehicle on November 14, 2019 from Reliable Toyota in Missouri. FAC, ¶ 105.

Each of the Plaintiffs concede that they still own and use their vehicles for personal or family use. FAC, ¶ 75 (Pulrabek and Rainey); ¶ 89 (Schwab); ¶ 107 (Dickmans). They each also concede that they are able to fill their tanks to approximately 11 gallons and achieve a range of 418 to 451 miles per tank of gas. *Id*., ¶ 77 (Pulrabek and Rainey); ¶ 93 (Schwab); ¶ 111 (Dickmans). Plaintiffs do not allege that their vehicles get worse mileage than the EPA mileage estimates.

None of the Plaintiffs allege harms from the alleged defect that are actual, concrete, and particularized. They do not allege harm to their person or vehicle. Plaintiffs also do not allege that they have run out of gas as a result of the alleged defect. Further, Plaintiffs do not allege any specific out-of-pocket losses. Finally, Plaintiffs do not allege that they attempted to re-sell their vehicles and received less than they would have absent an alleged defect.

## IV.   LEGAL STANDARD

Rule 12(b)(1) requires that a court dismiss the complaint if the court does not have subject matter jurisdiction over the dispute. *See* Fed. R. Civ. P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction"—here, Plaintiffs. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).  In deciding a Rule 12(b)(6) motion to dismiss, a court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (internal quotation marks omitted).

Where a plaintiff alleges fraud, they must also satisfy the heightened pleading standards of Rule 9(b).  Rule 9(b) requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent."  *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (plaintiff must plead "who, what, when, where, and how" of fraud claim) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir.1997)) (internal quotation marks omitted).

## V.   ARGUMENTS & AUTHORITIES

### A.   Plaintiffs Lack Article III Standing to Pursue Their Claims or, Alternatively, Have Not Sufficiently Pleaded Damages or Harm with Respect to their Claims

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1543 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The harm must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (quotation marks and internal citations omitted).  Plaintiffs do not allege any cognizable injury or damages, and therefore have not pleaded Article III standing.

### 1.  No Injury Due to Supposed Overpayment or Speculative Harm

Plaintiffs generally claim that they "would not have purchased [their vehicles] . . . or would have paid less for [them]" had they known of the alleged defect.  FAC, ¶¶ 50, 73, 87, 104, 121, 173.  They also allege that "consumers will pay a premium for hybrid and electric vehicles that are energy efficient and produce low emissions such as the RAV4 Hybrid and which have an acceptable driving range."  *Id*., ¶ 37.  These speculative, unspecific claims of injury do not confer Article III standing.

Plaintiffs cannot establish standing with "conclusory allegations that they overpaid for" a vehicle due to an alleged defect.  *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014).  Rather, "where the alleged wrong stems from the assertion of insufficient performance of a product or its features, a plaintiff must allege 'something more' than 'overpaying for a "defective" product' to support a claim."  *Id.* (quoting *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 n.11 (C.D. Cal. 2011)).

Plaintiffs have not alleged any facts suggesting that they tried to sell their vehicle and received (or were offered) less money than they would have because of the alleged defect such to support a conclusory "diminished value" allegation.  They have not alleged *any* facts that would show how much, if at all, the vehicles diminished in value as a result of the alleged defect.  For instance, they have not shown changes in estimated pricing for their vehicles in the Kelley Blue Book ("KBB").  *See Cahen v. Toyota Motor Corp.*, 717 Fed. App'x 720, 723 (9th Cir. 2017) (unsupported allegations that vehicles are worth less did not allege "a demonstrable effect on the market for their specific vehicles based on documented recalls or declining Kelley Bluebook values").

7

Further, they do not identify a particularized instance in which they suffered some concrete harm.  For example, although they allege that they made more trips to the gas station, they do not allege that they had to purchase more gas—as Plaintiffs make no allegation that the vehicles get fewer miles per gallon than the EPA estimates.

In addition, not only do Plaintiffs not allege that they personally have incurred any specific out-of-pocket damages related to any repairs performed on their vehicles due to the alleged defect, but they also do not allege that they have suffered physical injury, have stopped driving their vehicles, have run out of gas and were left stranded on the road, or anything close to "something more" than generalized overpayment allegations.  Consequently, Plaintiffs have not pleaded a cognizable economic injury based on alleged diminished value of their vehicles.  *See In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1167 (C.D. Cal. 2010) (plaintiffs must allege particularized injury-in-fact and cannot rely on generalized allegations of overpayment or loss in value); *Barakezyan v. BMW of N. Am., LLC*, No. 2:16-cv-00173-SJO-GJS, 2016 WL 2840803, at *4 (C.D. Cal. Apr. 7, 2016) (plaintiff failed to plead the required "something more" than "alleged diminished value").

Moreover, to the extent Plaintiffs characterize the harm they claim to have suffered as their disappointed expectations regarding the alleged mileage range achievable by the Subject Vehicles, such attempt fails.  Failing to meet consumer expectations for fuel mileage is not a cognizable harm.  *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG (VBKx), 2011 WL 13142144, at *12 (C.D. Cal. Apr. 28, 2011) ("*Gertz I*") (allegations of disappointed expectations insufficient to allege cognizable harm).

## 2.   No Injury Based on Potential Risk of "Spillage" During Fueling

The FAC also tries to manufacture Article III standing by asserting that the alleged defect could cause an environmental hazard if consumers attempt to "top-off" while refueling.  But Plaintiffs do not claim injury from supposed overflow, and they also admit that TMS expressly informs purchasers not to "top off" while refueling in the RAV4 2019 Hybrid Owner's Manual. FAC, ¶ 51.  *See also* Declaration of Robert M. Landis ("Landis Decl."), Ex. 1 at p. 242 (2019 RAV4 Hybrid Owner's Manual) ("Stop filling the tank after the fuel nozzle automatically clicks off"; "Do not top off the fuel tank."); *id.*, Ex. 3 at p. 241 (2020 RAV4 Hybrid Owner's Manual) (same).  Moreover, Article III standing cannot be premised on remote, conjectural, hypothetical, or speculative harms such as these.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (no standing for plaintiffs who alleged that iPods posed a risk of hearing loss but who did not actually experience hearing loss).

Like the plaintiffs in *Birdsong*, Plaintiffs here allege "harm" that is conjectural and hypothetical.  They contend that the alleged defect *may* cause drivers to choose to refuel their vehicles by "topping off" the fuel tank, which *may* cause unspecified harm.  But they fail to allege that they have engaged in this practice, let alone that they suffered an actual injury resulting therefrom.  Moreover, choosing to ignore TMS's express warning *not* to engage in this practice and using a product in a potentially unsafe manner does not amount to an injury-in-fact sufficient to confer standing—nor does it amount to a plausible allegation that Plaintiffs are entitled to relief. *See Birdsong*, 590 F.3d at 961.

### B.  <u>Plaintiffs Cannot State Claims for Breach of Express or Implied Warranties</u>

Plaintiffs claim that, as a result of the alleged defect, TMS and/or TMNA breached express and implied warranties.  Plaintiffs have failed to state a plausible claim for relief under any alleged

express warranty or under Missouri law.[3]

### 1.  Plaintiffs Do Not Sufficiently Allege Breach of an Express Warranty

Plaintiffs identify two alleged express warranties: (a) TMS's New Vehicle Limited Warranty ("NVLW"), and (b) the Federal Emission Control Warranty ("FECW").  Neither creates an actionable claim for breach of express warranty.

To start, the breach of express warranty claims fail against TMNA specifically because such claims are based on certain limited written warranties found in the 2019 RAV4 Hybrid Warranty & Maintenance Guide that was issued by TMS—not TMNA.  Only TMS is the warrantor thereof.  *See* Landis Decl., Ex. 2 at p. 10 (2019 RAV4 Hybrid Warranty & Maintenance Guide) (under the title "Who Is the Warrantor," the Warranty & Maintenance Guide makes clear that "[t]he warrantor for these limited warranties is Toyota Motor Sales, U.S.A., Inc"); *id*., Ex. 4 at p. 10 (2020 RAV4 Hybrid Warranty & Maintenance Guide) (same).  Plaintiffs do not distinguish between TMS and TMNA and improperly bring such claims against both Defendants.  Because TMS is the sole warrantor under its written warranties, all of Plaintiffs' express warranty claims should be dismissed with prejudice as to TMNA.  *See In re Toyota Motor Corp.*, No. 8:10 ML 02151 JVS (FMOx), 2012 WL 12929769, at *24 (C.D. Cal. May 4, 2012) (dismissing express warranty claim against Toyota Motor Corporation with prejudice because TMS was the sole warrantor).

*(a) NVLW*.  Plaintiffs' express warranty claim is based on an alleged breach of TMS's NVLW.  FAC ¶¶ 52, 180-81.  As Plaintiffs admit, however, the NVLW only "covers repairs and adjustments needed to correct defects in ***materials or workmanship*** of any part supplied by Toyota" subject to certain exceptions.  *Id.*, ¶ 52 (emphasis added); *see also* Landis Decl., Ex. 2 at

---

[3] Because Plaintiffs are all Missouri residents and seek to represent a Missouri subclass, TMS and TMNA construe Plaintiffs' state law claims as pleaded under Missouri law.

p. 13; *id.*, Ex. 4 at p. 13.  It does not cover ***design*** defects.  *Lee*, 992 F. Supp. 2d at 978 ("[T]he phrase 'free from defects in material and workmanship' in [TMS's] limited warranty refers only to manufacturing defects, not design defects.").

Accordingly, design defects fall outside the scope of TMS's NVLW.  *Gertz v. Toyota Motor Corp.*, No. CV 10–1089 PSG, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) ("*Gertz II*") (TMS's express warranty does not extend to design defects); *see also Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) ("[A] design defect cannot also be a defect in material and workmanship."); *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2013 WL 4045206, at *8 (N.D. Tex. Aug. 9, 2013) ("[I]t warranted that its products would be free from defects in material and workmanship. This phrase does not cover design defects.").

Plaintiffs' manufacturing defect allegations fare no better.  "A manufacturing defect exists if the product differs from the manufacturer's intended result or from other identical units of the same product, meaning that the design was appropriate but the manufacturing process deviated from the design."  *Rodas v. Porsche Cars N. Am., Inc.*, No. CV 14-2747 PSG (MRWx), 2015 WL 12762064, at *4 (C.D. Cal. 2015).  An alleged manufacturing defect is "often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line."  *McCabe v. Am. Honda Corp.*, 100 Cal. App. 4th 1111, 1120 (2002).  The archetypal example is when "the one soda bottle in ten thousand . . . explodes without explanation."  *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 453 (Cal. 1978).  Plaintiffs' attempt to fit the square peg of their design defect allegation into the round hole of the NVLW's plain language, with fleeting characterizations of the alleged defect as being "due to poor workmanship, manufacture, or design," should fail.  FAC, ¶¶ 3-4, 29.

11

Mere conclusory references to "materials or workmanship" are insufficient to trigger coverage under the NVLW, particularly in light of the Plaintiffs' entire set of allegations. *See Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013) ("scattered references to 'materials'" were insufficient, as the complaint otherwise focused on the use of resin in constructing gas tanks, "which is a design decision"); *see also Woo v. Am. Honda Motor Co.*, No. 19-cv-07042-MMC, 2020 WL 2768961, at *5 (N.D. Cal. May 28, 2020) (conclusory pleading of a defect "in material and/or workmanship" is not sufficient); *see also Rodas*, 2015 WL 12762064, at *4 ("plaintiffs should *identify/explain* how the [product] either deviated from [defendant's] intended result/design or *how* the [product] deviated from other seemingly identical [product] models") (citing *In re Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613 (2002)) (emphasis in original) (internal quotation marks omitted); *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1467-68 (2009) (express warranty claim premised on inability to achieve EPA estimated gas mileage did not adequately plead a manufacturing defect); *Sharma v. BMW of N. Am.*, No. C-13-2274 MMC, 2014 WL 2795512, at *5 (N.D. Cal. June 19, 2014) (dismissal of express warranty claims where complaint "includes no facts to support a theory that, at the time plaintiff's respective vehicles were manufactured, [the defendant] did not make them 'in accordance with [its] intended specifications.'") (citing *McCabe*, 100 Cal.App. 4th at 1120).

Notably, the FAC affirmatively alleges that the alleged defect is due to the ***re-design*** of the fuel tank in the Subject Vehicles.  FAC, ¶ 31 (alleging that TMS and TMNA "redesigned the gas tank"); *id.*, ¶ 42 ("re-designed fuel tank contains a Defect").  Plaintiffs also allege that *each* of the Subject Vehicles contains the alleged defect.  Their claim, in other words, concerns an alleged defect in design, not manufacturing.  In a nearly identical case, *Gertz II*, the plaintiffs contended, as here, that their Toyota vehicles were defective due to problems with materials and

workmanship, because the "fuel tank contracts in cold weather such that the Prius holds significantly less fuel than its stated capacity."  2011 WL 3681647, at *1.  The plaintiffs' pleading "ma[de] clear that the alleged fuel tank and gauge defects . . . exist with respect to *all* of Toyota's 2004-2009 Prius vehicles, not merely the particular vehicle owned by the [plaintiffs]."  *Id.* at *3 (emphasis in original).  Such a claim, "in other words, concerns an alleged defect in design," and therefore, because the warranty did not cover design defects, the court dismissed the plaintiffs' claim for breach of express warranty.  *Id.*  On appeal, the Ninth Circuit affirmed, similarly holding that the alleged design defect "d[id] not fall within the scope of Toyota's Basic Warranty against 'defects in materials or workmanship.'"  *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 668 (9th Cir. 2013).

Just as in *Gertz II* and *Troup*, the FAC here does not plausibly allege a manufacturing defect that constitutes a defect in "materials or workmanship" such to be covered by the NVLW. At best, it alleges a design defect—although TMS and TMNA do not concede that Plaintiffs have plausibly alleged a design defect, either.  Therefore, because design defects are not covered under the terms of the warranty (and Plaintiffs do not otherwise plausibly allege a manufacturing defect), Plaintiffs cannot state a claim for breach of the NVLW.

*(b) FECW*.  To the extent Plaintiffs seek to plead an express warranty claim based on the FECW, their claim should be dismissed.[4]  First, claims premised on an alleged breach of the FECW are expressly preempted by the Clean Air Act.  *See* 42 U.S.C. § 7543(a) ("No State . . . shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part [42 USCS §§ 7521 et seq.]."); *see also In re Caterpillar, Inc.*, No. 1:14–cv–3722, 2015 WL 4591236, at *13 (D.N.J. July 29, 2015) (claim for

---

[4] Although Plaintiffs reference the FECW in passing (*see* FAC, ¶¶ 53-54), they do not mention it or otherwise plead an express warranty claim based upon it (*see id.*, ¶¶ 177-86).

13

breach of FECW "expressly preempted by" the Clean Air Act).  Because the FECW is "mandated by federal law," and the federal government is empowered to enforce violations of the same, "permitting [a] claim for a breach of the FECW would be an attempt to enforce [a] standard relating to the control of emissions from new motor vehicles or . . . engines," barred under the FECW.  *Id*. (quoting 42 U.S.C. § 7543(a)).

Moreover, as with the NVLW, the FAC concedes that the FECW covers only "defects in materials and workmanship that may cause the vehicle to fail to meet [applicable federal emissions] standards."  FAC, ¶ 53.  *See also* Landis Decl., Ex. 2 at p. 18; *id*., Ex. 4 at p. 18. Because Plaintiffs have alleged a design defect, their breach of express warranty claim based on the FECW fails for the same reason as their claim based on the NVLW.  *See* Section V(B)(1)(a), *supra*.

Finally, and notwithstanding the foregoing, the FECW only applies if (i) an "EPA-approved I/M program is in force in [Plaintiffs'] area"; (ii) the vehicle fails to meet applicable emissions standards as determined by an EPA-approved emissions test; and (iii) the failure results in a penalty to the vehicle owner under local, state, or federal law.  *See* Landis Decl., Ex. 2 at p. 18; *id*., Ex. 4 at p. 18.  Plaintiffs do not allege any of these facts.

### 2.  Plaintiffs' Breach of the Implied Warranty of Merchantability Claim Also Fails

Plaintiffs do not state an implied warranty of merchantability claim because they do not allege that their vehicles are not merchantable or unfit for their ordinary purpose.  *Kinder v. Midwest Marine, Inc.*, No. 14-4133-CV-C-MJW, 2015 WL 12835687, at *4 (W.D. Mo. Mar. 20, 2015) (citing *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989)).

Under Missouri law, the implied warranty of merchantability warrants that the product is "fit for the ordinary purposes for which such goods are used." MO. REV. STAT. 400.2-314(2)(c); *see also Elfaridi v. Mercedes-Benz USA, LLC*, 2018 No. 4:16 CV 1896 CDP, 2018 WL 4071155, at *10 (E.D. Mo. Aug. 27, 2018). It "does not require a perfect product, only one of reasonable quality or reasonable fitness," and "periodic problems" do not suffice to violate this minimum standard. *Elfaridi*, 2018 WL 4071155, at *10. "With regard to automobiles, the implied warranty of merchantability can only be breached when the 'vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation.'" *Id.* (quoting *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999)); *see also Elfaridi*, 2018 WL 4071155, at *10 (despite plaintiff's sunroof shattering, vehicle still functioned, and therefore did not violate implied warranty of merchantability under Missouri law).

Here, Plaintiffs do not allege that their vehicles are unfit for providing transportation. To the contrary, they concede that they still own and use the vehicles, including for personal, family, or household use. FAC, ¶¶ 75, 89, 107. Moreover, they concede that they are able to achieve up to 451 miles on a single tank of gas, regardless of how many gallons their tank holds. *See id.*, ¶¶ 77, 93, 111. In nearly identical circumstances under the same legal standard,[5] the court in *Gertz I* determined that a plaintiff could not state a claim for breach of the implied warranty of merchantability based on an alleged fuel tank defect in which, despite the defect, the subject

---

[5] While *Gertz I* concerned a claim for breach of the implied warranty of merchantability under California law, the implied warranty of merchantability contains the same elements and standards in both California and Missouri. *Compare Gertz I*, 2011 WL 3681647, at *4 (the California Commercial Code implies a warranty of merchantability that goods are "fit for the ordinary purposes for which such goods are used") *with Elfaridi*, 2018 WL 4071155, at *10 ("Under Missouri law, the implied warranty of merchantability warrants that the product is 'fit for the ordinary purposes for which such goods are used.'") (quoting MO. REV. STAT. 400.2-314(2)(c)).

vehicles were able to hold six to ten gallons of fuel and to travel at least 300 miles on a tank of gas.  *Gertz I*, 2011 WL 13142144, at *12.

Insofar as the Subject Vehicles did not satisfy Plaintiffs' subjective hopes and expectations for fuel range, this is insufficient to state a claim for implied warranty of merchantability.  *See*, *e.g.*, *Williams v. United Techs. Corp.*, No. 2:15-cv-04144-NKL, 2015 WL 7738370, at *6 (W.D. Mo. Nov. 30, 2015) ("The implied warranty of merchantability does not mean a promise by the merchant that the goods are ***exactly as the buyer expected***, but rather that the goods satisfy a ***minimum level of quality***.") (emphasis added); *see also General Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) ("A product which performs its ordinary function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like or even as well as it could.").  Plaintiffs' implied warranty claim should be dismissed.

### 3.      Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") Claim Fails as a Matter of Law

The MMWA authorizes civil actions by consumers to enforce the terms of an implied or express warranty under state law.  It "does not provide an independent basis for liability, but instead provides a federal cause of action for state law express and implied warranty claims."  *See Taliaferro v. Samsung Telecomm. Am., LLC*, No. 3:11–CV–1119–D, 2012 WL 169704, at *10 (N.D. Tex. Jan. 19, 2012) (internal quotation and citation omitted)).  Therefore, to plead a viable MMWA claim, a plaintiff must plead a violation of state warranty laws.  *Gertz II*, 2011 WL 3681647, at *6.  Because Plaintiffs' state law warranty claims fail for the reasons stated above, their MMWA claim necessarily fails as a matter of law and should be dismissed.  *Gertz II*, 2011 WL 3681647, at *6; *Salinas vs. Ford Motor Co.*, No. 7:15-CV-11, 2015 WL 13121265, at *5 (S.D.

Tex. Sep. 3, 2015) ("[p]laintiff has not sufficiently pleaded a viable state-law warranty claim . . . her MMWA claim must fail.").

Plaintiffs' MMWA claims also fail because the Plaintiffs do not allege that they availed themselves of TMS's informal dispute resolution procedures, as required by 15 U.S.C. § 2310(a). The warranty manual for Plaintiffs' vehicles include a "Dispute Settlement Program." *See* Landis Decl., Ex. 2 at pp. 5-6, 10-11, 17; *id.*, Ex. 4 at pp. 5-6, 10-11, 17.  Consumers must use this Dispute Settlement Program *before* seeking remedies under the MMWA in a court action.  *See id.* at p. 10. Plaintiffs do not allege that they participated in the dispute resolution program as required.  *See* 15 U.S.C. § 2310(a)(3)(C) (consumers "may not" commence a civil action or class action unless they *first* resort to the warrantor's informal dispute settlement procedures).

Finally, the MMWA claim should be dismissed because the FAC names fewer than 100 plaintiffs.  *See* 15 U.S.C. § 2310(d)(3)(C) ("No claim shall be cognizable in a suit brought . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 n.13 (5th Cir. 1984).

### C. Plaintiffs' Fraud Claim Fails

Plaintiffs' fraud claim fails for numerous reasons: because they have not alleged with particularity that they viewed or relied upon specific statements made by TMS or TMNA or that the statements themselves were false; because they have not alleged that TMS or TMNA had any knowledge of the alleged defect or a duty to disclose the same; and because they have not alleged any active concealment by TMS or TMNA.

Under Missouri law, to plead an actional misrepresentation, Plaintiffs must allege: "(1) the representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his/her ignorance of the truth; (5) the speaker's intent that his/her representation be acted on by the hearer

in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and (9) the hearer's consequent and proximately-caused injuries." *Kansas City Hispanic Ass'n Contractors Ent., Inc. v. City of Kansas City*, 279 S.W.3d 551, 557 (Mo. App. 2009) (quoting *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo. App. 1994)) (internal quotation marks omitted).  Plaintiffs here have failed to sufficiently allege these required elements.

Moreover, to satisfy the pleading requirements of Rule 9(b), a complaint "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (quoting *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (internal quotation marks omitted).  Particularly in cases with multiple defendants, "the complaint should inform *each defendant* of the nature of [its] alleged participation in the fraud." *Streambend Props, II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (emphasis added) (internal quotation marks omitted).

### 1.  Plaintiffs Fail to Distinguish Between Defendants

Plaintiffs have sued TMS and TMNA but have failed to identify what purportedly fraudulent conduct is attributable to each Defendant—instead directing their vague allegations at the Defendants collectively.  Plaintiffs' fraud-based claims should be dismissed on this basis alone.

The Plaintiffs seek to avoid this heightened pleading requirement by claiming that TMS and TMNA communicate with Toyota Motor Corporation and therefore, each entity's actions should be attributed to the other entity.  FAC, ¶¶ 21-22.  Conclusory fraud allegations that entities

are alter egos of each other "will not survive a motion to dismiss." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008).

Another federal district court dismissed this same theory and struck the alter ego allegations in *In re Toyota Motor Corp.*, holding that "[p]laintiffs may not rest on legal conclusions regarding agency that are cast as factual allegations . . . . [Such] boilerplate cross-authority/cross-agency/ratification allegations run afoul of *Twombly* and *Iqbal*." 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011). Neither Rule 12(b)(6) nor Rule 9(b) provide an exception to their pleading requirements that would allow Plaintiffs to "lump all defendants together and fail to segregate the alleged wrongdoing of one from those of another." *Health Choice Alliance, LLC v. Eli Lilly & Co.*, No. 5:17-CV-123-RWS-CMC, 2018 WL 4026986, at *46 (E.D. Tex. July 25, 2018), R&R adopted, 2018 WL 3802072 (E.D. Tex. Aug. 10, 2018) (plaintiff "repeatedly makes undifferentiated allegations about all defendants with respect to the schemes"); *Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-CV-130-RP, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016) (plaintiffs failed to distinguish between the two defendants in a way that allowed the defendants and the court to understand what role each allegedly plays in the plaintiffs' claims).

### 2.   Plaintiffs Have Not Plausibly Alleged an Actionable Misrepresentation

Plaintiffs do not plead sufficient identifying details that TMS and TMNA could use to evaluate the basis for Plaintiffs' fraud claims. For example, Plaintiffs Pulkrabek, Rainey, and Schwab each allege they reviewed a "pamphlet" at or around the time of purchase, but none of them states who provided the pamphlet, who produced the pamphlet, what the pamphlet concerned, or any other pertinent detail that meets the bare minimum of pleading requirements under Rule 9(b). FAC, ¶¶ 73, 90. In the absence of any such information  and where this information is solely within Plaintiffs' knowledge and possession, all claims alleging fraud fail

under Rule 9(b).  *See United States ex rel. Russell v. Epic Healthcare Mgmt. Gp.*, 193 F.3d 304, 308 (5th Cir. 1999) (affirming dismissal of a fraud claim for insufficiently particular allegations identifying the contents of allegedly false representations or the identity of the person making the representations).

Plaintiffs center their misrepresentation allegations around two alleged representations— (1) the 14.5-gallon capacity of the fuel tank, and (2) the Subject Vehicles' combined 40 MPG fuel mileage estimates.  Neither representation gives rise to a plausibly pleaded claim for relief.  For example, Plaintiffs take the 14.5 gallon capacity and bootstrap it with the EPA estimates to try to allege that TMS and TMNA misled Plaintiffs about the estimated mileage range of the Subject Vehicles.  *E.g.*, FAC, ¶ 93.  While TMS and/or TMNA use the EPA's fuel mileage estimates in connection with Monroney stickers, owner's manuals, and/or an alleged e-brochure, there is nothing false or misleading about auto manufacturers repeating EPA fuel economy estimates.  *See Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG, 2012 WL 313703, at *6 (C.D. Cal. Jan. 23, 2012).  Nor do the Plaintiffs allege that the EPA fuel economy estimates are false.

Moreover, state law claims based on the use of EPA estimates in advertisements and other materials are generally preempted by federal law.  *See In re Ford Fusion and C-Max Fuel Economy Litig.*, 2015 WL 7018369, at *27 (S.D.N.Y. Nov. 12, 2015) (use of EPA estimates falls within the scope of applicable Federal Trade Commission regulations and the Energy Policy and Conservation Act); *see also Sanchez v. Ford Motor Co.*, No. 13-cv-01924-RBJ, 2014 WL 2218278, at *4 (D. Colo. May 29, 2014) ("Insofar as Mr. Sanchez is claiming that the EPA estimates in the 45 MPG COMBINED graphic were inherently deceptive, failed to comply with federal regulations, or that the disclosure was too small, difficult to read, confusing, those claims are preempted by the FTC regulations.").

Preemption does not apply where a manufacturer makes statements that "go beyond the mere (and mandatory) disclosure of EPA fuel economy estimates." *Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-CV-00030, 2017 WL 354251, at *5 (W.D. Va. Jan. 23, 2017).  For example, in *In re Ford Fusion*, the court found allegations that the manufacturer "did not only rely on the EPA estimate, but also **guaranteed** real-world fuel economy based upon it" were not preempted.  2015 WL 7018369, at *26.  By contrast, in *Sanchez*, Ford used the phrases "going places others aren't" and "doing what others are not" in an advertisement voice-over while displaying a "45 MPG" graphic.  The court held that these were general statements akin to non-actionable puffery. *Sanchez*, 2014 WL 2218278, at *5.

Here, Plaintiffs went beyond the non-actionable EPA estimates by making their own range calculation, that the Subject Vehicles should travel 551 to 594 miles on a full tank of gas.  Neither those numbers, nor the MPG estimate amount to an actionable misrepresentation—one is a protected restating of a government agency's "estimate," the other is Plaintiffs' arithmetic. Plaintiffs' further suggestion that "Toyota's" advertising statement "Go farther . . . Go faster" is an actionable misrepresentation is likewise implausible—the statement is akin to the "going places others aren't" statements found to be non-actionable puffery in *Sanchez*, 2014 WL 2218278, at *5 (not a "representation[] of fact subject to measure").  Thus, Plaintiffs' misrepresentation claims, premised on their own calculations of EPA-required fuel economy estimates, are not actionable, and should be dismissed.

### 3. Plaintiffs Do Not Plausibly Allege Pre-Sale Knowledge by TMS or TMNA

Even if Plaintiffs had pleaded specific alleged pre-sale representations by TMS or TMNA that they relied upon prior to purchase under Rule 9(b), they fail to allege that TMS and/or TMNA had pre-sale knowledge of the alleged falsity of the representation(s).  Beyond a conclusory

allegation that TMS and/or TMNA completed pre-sale testing that revealed the alleged Defect, Plaintiffs allege, as evidence of pre-sale knowledge, a November 2019 "Tech Tip" indicating that the Subject Vehicles had an issue where the fuel gauge would incorrectly measure fuel levels. FAC, ¶¶ 60-61.  But this Tech Tip demonstrates that TMS or TMNA had identified an issue relating to fuel gauge readings, rather than that TMS or TMNA had knowledge of an alleged defect that *prevented the fuel tank from filling to capacity*.  *See Fisher v. Honda N. Am.*, No. LA CV13–09285 JAK(PLAx), 2014 WL 2808188, at *6 (C.D. Cal. June 12, 2014) (technical service bulletins ["TSBs"] did not support an inference of knowledge because where they did not refer to the defect at issue); *see also Honda Motor Co. v. Super. Ct.*, 199 Cal. App. 4th 1367, 1378 (2011) ("A TSB is not and cannot fairly be construed by a trial court as an admission of a design or other defect, because TSB's are routinely issued to dealers to help diagnose and repair typical complaints"). This is fatal to their claims of actionable misrepresentations.  *Lee*, 992 F. Supp. 2d at 976 (dismissing claims because the plaintiffs "failed to identify any untruthful statement made by Toyota").

#### 4.   TMS and/or TMNA Had No Duty to Disclose to End-Users

A "'fraud claim is permitted only if it arises from acts that are separate and distinct from the contract.'"  *Flynn v. CTB, Inc.*, No. 1:12-CV-68 SNLJ, 2013 WL 28244, at *8 (E.D. Mo. Jan. 2, 2013)  (quoting *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 820 (8th Cir. 2010)).  Where, as here, a manufacturer or distributor had no presale dealings with a consumer, "there were no pre-contract representations or omissions, separate and apart from the contract itself, that could have given rise to an independent fraud claim."  *Id.* ("plaintiffs have not cited—and this Court has not found— any case in which a manufacturer that had no pre-sale relationship with the buyer was found to have a duty to speak.").

### 5.  Plaintiffs' Omission-Based Fraud Theory Also Fails

Under Missouri law, to state a claim for fraudulent omission, plaintiffs must allege the same elements required to establish a claim for fraudulent misrepresentation; however, "[s]ilence may amount to a representation, constituting the first element of fraudulent misrepresentation, if the party sought to be held accountable for the fraud (1) conceals material facts and (2) has a legal duty to disclose such facts."  *Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005).

Here, Plaintiffs have not alleged that they have a special or fiduciary-type relationship with TMS or TMNA, the remote manufacturer.  Rather, they claim a duty to disclose because TMS and/or TMNA "had exclusive knowledge of the material facts described above and such facts were not known or reasonably knowable by the Plaintiffs and putative class; because Toyota actively concealed these material facts from Plaintiffs and the putative class; and because it made representations regarding the Class Vehicles specifications to federal agencies."  FAC, ¶ 150. None of these pleaded theories are plausible, for the reasons explained below.[6]

***a. No Presale or Superior Knowledge.***  Plaintiffs claim that "[m]anufacture[r]s such as Toyota perform rigorous product testing prior to releasing their vehicles," and through this testing, "Toyota" would or should have discovered the alleged defect.  FAC, ¶¶ 7, 57-58, 166.  Allegations that a manufacturer "would or should" have known of an alleged defect through testing are insufficient under the *Twombly* standard to plead knowledge under Rule 9(b).  *See*, *e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("allegation that HP, as the

---

[6] Plaintiffs' theory that TMS and/or TMNA had a duty to disclose the alleged defect because they "made representations regarding . . . specifications to federal agencies" is both devoid of any factual support (such as the alleged representations, when made and to whom), and also legally untenable.  Missouri law does not recognize a duty to disclose merely because a defendant is regulated by, or reports to, the federal government.  *Cf. Zubres*, 276 S.W.3d at 340.

manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect.").[7]  Moreover, Plaintiffs' purported reliance on a November 2019 "Tech Tip" to show alleged pre-sale knowledge of an alleged fuel tank defect fails for the reasons stated *supra* Section V(C)(3).

Plaintiffs also cite to a February 6, 2020 article that **postdates** their purchases and thus cannot prove **presale** knowledge (*see* FAC, ¶¶ 64-65 & n.4), and which references undated consumer complaints that are also insufficient to show TMS or TMNA's presale knowledge.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908-09 (N.D. Cal. 2018) ("Plaintiffs do not allege that Huawei ever saw or responded to these online complaints, let alone that Huawei knew about them before Plaintiffs purchased their phones."); *Wilson*, 668 F.3d at 1147 ("[C]ourts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect at the time of sale.").

Putting aside Plaintiffs' inability to plead with particularity that TMS or TMNA knew of an alleged defect prior to Plaintiffs' purchases, they also have failed to plead *superior* knowledge such to give rise to a duty to disclose.  They have alleged the complete opposite: that, at some point, consumers began complaining about an obvious, non-latent alleged defect in public forums,

---

[7] *See also Burdt v. Whirlpool Corp.*, No. 15-01563, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) (allegations that defendant engaged in pre-release testing insufficient to establish presale knowledge where plaintiff did not provide details about dates of tests or what tests would have shown); *Grodzitsky v. Am. Honda Motor Co.*, No. 12-112-SVW, 2013 WL 690822, at *2 (C.D. Cal. Feb. 19, 2013) (allegations of knowledge insufficient where based on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources").

*and* TMS/TMNA released statements about the same.  *See* FAC, ¶ 64 (referencing "more than 100 fuel tank related complaints about the RAV4 Hybrid"); *id.*, ¶¶ 60, 65.

Missouri law further requires a showing that the consumer both exercised due diligence to discover the information, *and* that the consumer did not have the opportunity to learn the material facts at issue.  *See In re Gen. Motors Corp. Anti-Lock Brake Products Liab. Litig.*, 966 F. Supp. at 1536 (plaintiffs failed to plausibly allege a duty to disclose based on superior knowledge where no "artifice or trick" to prevent independent inquiry by consumer, and no "lack of an opportunity to become appraised of the facts") (consumer must also show due diligence).[8]

Indeed, Plaintiffs' own allegations that the alleged defect was known publicly through customer complaints and reviews on widely-disseminated websites defeat any assertion that TMS and/or TMNA had superior knowledge and a duty to disclose.  *See Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG, 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012) ("the idea that Toyota could have retained exclusive, or even superior knowledge of the Prius's real-world fuel performance" was "absurd" where hundreds of thousands of the vehicles were driven daily under the conditions at issue).

**b. No Active Concealment.**  Plaintiffs also have failed to plead particularized facts showing that TMS or TMNA took steps to "actively conceal" the alleged defect.  "An allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment, e.g., that the defendant 'sought to suppress information in the public domain or obscure the consumers' ability' to discover it."  *Taragan v. Nissan N. Am., Inc.*, No. C 09–3660 SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (quoting *Gray*, 2012 WL 313703, at *10

---

[8] *See also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 766 (Mo. 2007) ("Even with superior knowledge, a duty to disclose will be imposed only if the material facts would not be discovered through the exercise of ordinary diligence.").

("mere nondisclosure" does not constitute "active concealment")); s*ee also Moses.com Securities, Inc.*, 406 F.3d at 1064 (plaintiff must show duty to disclose and concealment).  Rather, Plaintiffs again plead the exact opposite: that TMS and/or TMNA issued a public statement about the alleged defect; stated that it was investigating the issue; and detailed best practices for consumers in the meantime.  FAC, ¶ 65.

### 6.  Plaintiffs' Fraud Claim is Barred by the Economic Loss Doctrine

Plaintiffs' fraud claim is also barred by the economic loss doctrine.  Under Missouri law, where an alleged fraud claim arises from alleged representations concerning the quality or character of goods which are essentially inseparable from the underlying contract, it is barred by the economic loss doctrine.  *See*, *e.g.*, *Patterson Oil Co. v. VeriFone, Inc.*, No. 2:15–cv–4089, 2015 WL 6149594, at \*8-9 (W.D. Mo. Oct. 19, 2015) (doctrine "prohibits a cause of action in tort where losses are purely economic"; only fraud claims separate from the contract are not prohibited thereunder) (quoting *Rockport Digital Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir.1995).  Because the fraud claims are inseparable from the underlying transaction, and Plaintiffs seek only purported economic damages, the claim is barred by the economic loss doctrine.

### 7.  The Missouri Merchandising Practices Act Also Fails

Plaintiffs' claim under the Missouri Merchandising Practices Act ("MMPA") fails for the same reasons as the fraud claim.  *See*, *e.g.*, *Johnsen v. Honeywell Int'l Inc*., No. 4:14CV594 RLW, 2016 WL 1242545, at \*2 (E.D. Mo. Mar. 29, 2016) (plaintiff must allege facts such as "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby") (quoting *Mattingly v. Medtronic*, Inc. 466 F. Supp. 2d 1170, 1174 (E.D. Mo. 2006)).  An MMPA claim concerning an omission of

a material fact must "allege with specificity the time and place of the conduct complained of, the content omitted, the identity of the person who omitted it, and what was obtained or given up thereby."  *See Budach v. NIBCO, Inc.*, No. 2:14–cv–04324., 2015 WL 3853298, at *7 (W.D. Mo. June 22, 2015).

### D.  **Plaintiffs' Unjust Enrichment Claim Fails**

Plaintiffs plead unjust enrichment, contending that "consumers paid hundreds of millions of dollars for Defendant's defective 2019 and 2020 RAV4 Hybrid due to Defendants' false statements and omissions concerning the Class Vehicle's fuel tank capacity," and "Plaintiffs and class members are entitled to the return of all payments."  FAC, ¶¶ 158-59.

Because the claim references the same allegations that underlie Plaintiffs' fraud claim, it, too, must meet the heightened pleading standards of Rule 9(b).  *See Kondash v. Kia Motors Am.*, No. 1:15-cv-506, 2016 WL 11246421, at *10 (S.D. Ohio June 24, 2016) (because unjust enrichment claim "sounds in fraud," it was also subject to Rule 9(b)).  For the reasons stated *supra* Section V(C), Plaintiffs have failed to meet this standard.  Plaintiffs do not allege with requisite specificity that they viewed, or relied upon, any statements by TMS or TMNA.

Nor can Plaintiffs' unjust enrichment claim continue based on warranty allegations.  Where a plaintiff pleads an unjust enrichment claim on the same allegations as a warranty claim, it is barred under Missouri law.  *See Elfaridi*, 2018 WL 4071155, at *12 ("plaintiffs have explicitly based their unjust enrichment claims on the violation of the [new vehicle limited warranty]. Because the [warranty] governs the same subject matter, plaintiffs are precluded from recovering under an equitable theory"); *see also Flynn*, 2013 WL 28244, at *6 (unjust enrichment claim barred where "plaintiffs' remedies are limited to those under the warranty").

Moreover, the NVLW sets forth the scope of the warranty that covered their vehicles;

Plaintiffs cannot change the scope of it by claiming unjust enrichment. *See Owen v. Gen. Motors Corp.*, No. 06-4067-CV CNK, 2007 WL 172355, at *5 (W.D. Mo. Jan. 18, 2007) ("To the extent that [the plaintiffs] argue a benefit was conferred on [defendant] by the fact that they overpaid for a [vehicle] with defective wipers, that argument is foreclosed by the existence of the warranty which they knew would last only four years.").[9]

Because the NVLW is the exclusive remedy, Plaintiffs cannot recover under an equitable theory. *See Elfaridi*, 2018 WL 4071155, at *12 (dismissing with prejudice unjust enrichment claims "explicitly based . . . on the violation of the NVLW").

Finally, Plaintiffs fail to plausibly plead that TMS and/or TMNA has retained anything from them. Rather, they concede they purchased their vehicles from local dealerships. FAC, ¶¶ 72, 88, 105. This is further fatal to their claims. *See Kondash*, 2016 WL 11246421, at *13 ("Although Kondash alleges he purchased a vehicle from a Kia dealership in Cincinnati, he alleges no facts to establish a *tie of causation* – direct or indirect – between himself and Defendants.") (emphasis in original); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952-53 (N.D. Ohio 2009) (having purchased their appliances from retail stores, plaintiffs failed to allege they paid money directly to the factory).

### E.  Plaintiffs Lacks Standing to Request Declaratory Relief

Plaintiffs' request for declaratory relief should be dismissed. They do not allege that they are likely to purchase another Subject Vehicle. Thus, they lack standing to request declaratory relief because there is no allegation of likely future harm. *See Lattaker v. Rendell*, 269 Fed. App'x 230, 233 (3d Cir. 2008) ("[A] party requesting a declaratory judgment must allege facts from which

---

[9] To the extent Plaintiffs argue they are able to plead this claim in the alternative, given their assertion of warranty claims, they are barred from pleading an unjust enrichment claim. *See Elfaridi*, 2018 WL 4071155, at *12 (dismissing unjust enrichment claims because plaintiffs pleaded warranty claims).

it appears there is a substantial likelihood that he will suffer injury in the future.").

### F.   Plaintiffs' Nationwide Class Allegations Should Also Be Dismissed

Plaintiffs seek to represent a nationwide class of consumers on all of their claims besides their purported claim under the MMPA.  They cannot do so.  Where a defect in class allegations is "facially apparent from the pleadings," courts may dismiss the class allegations on the pleadings. *John v. National Security Fire and Casualty Co.*, 501 F.3d 443, 445 (5th Cir. 2007).  "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (citations and internal quotations omitted); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) ("A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met."); *see also Myart v. Glosson*, No. SA–14–CV–831–XR, 2014 WL 6612008, at *5 (W.D. Tex. Nov. 20, 2014) ("Courts have cited *Falcon* and *John* to strike or dismiss [under Rule 12(f) or Rule 12(b)(6)] class-action allegations from a complaint when the pleadings clearly fail to allege facts to support the minimum requirements of Rule 23.") (citations omitted).

First, although Plaintiffs purport to represent a nationwide class on their claims for fraud, unjust enrichment, express warranty, and implied warranty of merchantability under Missouri law, they lack standing to assert claims under the laws of other states in which they do not reside and/or did not make a purchase.  *See*, *e.g.*, *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[E]ach class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."); *Mollicone v.*

*Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS (MRWx), 2017 WL 440257, at *9-10 (C.D. Cal. Jan. 30, 2017) (dismissing claims based on laws of states other than those represented by named plaintiffs); *Sponchiado v. Apple Inc.*, No. 18-CV-07533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019) (same).  Nor can Plaintiffs apply the law of Missouri to residents of *other* states such to form a putative nationwide class.  *See*, *e.g.*, *Swearingen v. Late July Snacks LLC*, No. 13-cv-04324-EMC, 2017 WL 1806483, at *9  (N.D. Cal. May 5, 2017) (where plaintiffs "made no allegations that they purchased products outside of California, and no allegations supporting a nexus between California law and any out of state purchases," court dismissed nationwide class allegations).

In addition, and notwithstanding the other bars to an MMWA class discussed above (*see* Section V(B)(3) *supra*), Plaintiffs cannot represent a nationwide class on their MMWA claim.  *See Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1050 (S.D. Tex. 2016) (granting motion to dismiss "all claims asserted by Plaintiffs on behalf of a putative National Class for alleged violations of the MMWA") ("[T]he express warranty law of each state will apply to [the MMWA] claim. In the Fifth Circuit, the burden of applying the warranty law of each jurisdiction defeats predominance and, thus, national class certification.").

## VI.     CONCLUSION

For the foregoing reasons, TMS and TMNA respectfully request that the Court grant this Motion.  Because amendment would be futile given that the core factual allegations cannot support Plaintiffs' claims no matter how pleaded, TMS and TMNA respectfully request that the FAC be dismissed in its entirety with prejudice.  *See*, *e.g.*, *Carrillo v. Bank of America, N.A.*, No. CIV.A. H-12-3096, 2013 WL 1558320, at *5 (S.D. Tex. April 11, 2013) (dismissing with prejudice and denying leave to amend where amendment would "be futile").

Dated:  August 13, 2020                    NELSON MULLINS RILEY & SCARBOROUGH LLP

/s/ Mark T. Clouatre
Mark T. Clouatre (Texas Bar #00793521)
1400 Wewatta Street, Suite 500
Denver, CO 80202
T 303.583.9900 / F 303.583.9999
mark.clouatre@nelsonmullins.com

Jahmy S. Graham (Admitted *Pro Hac Vice*) (CA Bar
No. 300800)
Pacific Gateway
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
T 424.221.7400 / F 424.221.7499
jahmy.graham@nelsonmullins.com

Matthew G. Lindenbaum (Admitted *Pro Hac Vice*) (MA
Bar No. 670007)
Christine M. Kingston (Admitted *Pro Hac Vice*) (MA
Bar. No. 682962)
One Post Office Square, 30th Floor
Boston, MA 02109
T 617.217.4700 / F 617.217.4710
matthew.lindenbaum@nelsonmullins.com
christine.kingston@nelsonmullins.com

Attorneys for Defendants
TOYOTA MOTOR SALES, U.S.A., INC., and
TOYOTA MOTOR NORTH AMERICA, INC.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Counsel of record were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this 13th day of August, 2020.


*/s/ Mark T. Clouatre*
Mark T. Clouatre