IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| DAVID PULKRABEK, BARBARA RAINEY, ANDREW SCHWAB, WESLEY DICKMAN, and WHITNEY DICKMAN, on their own behalf and on behalf of a class of similarly situated individuals,<br><br>      Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC.<br><br>and<br><br>TOYOTA MOTOR NORTH AMERICA, INC.,<br><br>      Defendants. | Civil No. 2:20-cv-00036-JRG-RSP<br><br>District Judge Rodney Gilstrap<br>Courtroom<br>Magistrate Judge Roy S. Payne |

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAINTIFFS' BRIEF IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND....................................................4

     A.    Procedural History ......................................................................................4

         1.    The *Pulkrabek* Action .................................................................4

         2.    Other Litigation ........................................................................5

     B.    The Warranties at Issue................................................................................7

     C.    Settlement Negotiations ..............................................................................7

     D.    Discovery Efforts ........................................................................................9

III.    THE SETTLEMENT ...............................................................................................10

     A.    The Settlement Class..................................................................................10

     B.    The Settlement Relief ...............................................................................10

     C.    Notice to the Class and Settlement Administration ..............................11

     D.    Settlement Special Master.........................................................................13

     E.    Attorneys' Fees, Costs, and Class Representative Service Awards...................14

     F.    The Settlement Release..............................................................................14

IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL....................................14

     A.    Legal Standard and Six-Factor Test.........................................................14

     B.    The Settlement Satisfies the Standards for Preliminary Approval ....................16

         1.    There Is No Fraud or Collusion .................................................16

         2.    The Complexity, Expense, and Likely Duration of the Litigation .........17

         3.    The Probability of Plaintiffs' Success on the Merits .............................18

         4.    The Settlement Benefits in Comparison to the Range of Possible Recovery ...........................................................................19

5.    The Stage of the Proceedings and the Amount of Discovery Completed ................................................................................21

6.    The Opinion of Experienced Class Counsel .............................................22

V.    THE PROPOSED CLASS SHOULD BE CERTIFIED ................................................22

A.    Rule 23(a) Requirements Are Satisfied .............................................23

1.    The Settlement Class Is Numerous ...........................................23

2.    There Are Common Questions of Law and Fact ....................................23

3.    The Class Representatives' Claims Are Typical ...................................24

4.    The Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class .......................24

B.    Rule 23(b) Requirements Are Satisfied .............................................25

1.    Common Questions Predominate .............................................25

2.    Class Treatment Is Superior to Other Forms of Adjudication ................26

VI.    THE CLASS NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED..........27

VII.    PROPOSED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS .................................................28

VIII.    THE PROPOSED SCHEDULE OF EVENTS .............................................29

IX.    CONCLUSION....................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................22, 25, 26

*Boykin v. Georgia-Pacific Corp.*,
706 F.2d 1384 (5th Cir. 1983) ................................................................23

*Bywaters v. U.S.*,
196 F.R.D. 458 (E.D. Tex. 2000)............................................................24

*Collins v. Sanderson Farms, Inc.*,
568 F. Supp. 2d 714 (E.D. La. 2008) ......................................................19

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ............................................................14, 21

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ................................................................22

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ..................................................................27

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ...........................................17, 18, 19, 27

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)................................................................................27

*Evans v. Greenlaw*,
No. 3:16-cv-635, 2018 U.S. Dist. LEXIS 80569
(N.D. Tex. May 14, 2018)........................................................................21

*In re Fannie Mae Sec., Derivative, & ERISA Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013)..............................................................17

*Fath v. Am. Honda Motor Co.*,
No. 18-CV-1549, 2019 U.S. Dist. LEXIS 215090
(D. Minn. Dec. 13, 2019)........................................................................29

*Feder v. Elec. Data Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) ..................................................................25

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
No. 9-CV-852, 2017 U.S. Dist. LEXIS 142470
(E.D. Wis. Aug. 8, 2017) ................................................................................29

*Garza v. Sporting Goods Props.*,
No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009
(W.D. Tex. Feb. 6, 1996) ...........................................................................18, 19

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................................18

*Godec v. Bayer Corp.*,
No. 1:10-CV-224, 2011 U.S. Dist. LEXIS 131198
(N.D. Ohio Nov. 11, 2011) ...........................................................................29

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) .........................................................................17

*Kemp v. Tower Loan of Miss., LLC*,
No. 3:15-CV-499, 2017 U.S. Dist. LEXIS 209085
(S.D. Miss. Dec. 20, 2017) ............................................................................20

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) .....................................................17, 20

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) .........................................................................15

*Marcus v. J.C. Penney Co.*,
No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 214427
(E.D. Tex. Dec. 18, 2017) ..............................................................................18

*McNamara v. Bre-X Minerals Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002) ..............................................................15, 22

*Morrow v. Wash.*,
277 F.R.D. 172 (E.D. Tex. 2011) ...................................................................24

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .....................................................................23, 24

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) .....................................................................15, 21

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2nd Cir. 1998) ........................................................................14

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ............................................................... 19

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ............................................................ 15, 19

*Shaw v. Toshiba Am. Info. Sys.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................................ 23, 26

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) .............................................................. 16

*Telles v. Midland Coll.*,
  No. MO:17-CV-0083, 2018 U.S. Dist. LEXIS 227812
  (W.D. Tex. Apr. 30, 2018) ................................................................... 16, 23

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
  No. 20-cv-00337, 2021 U.S. Dist. LEXIS 69643
  (N.D. Cal. Apr. 9, 2021) .......................................................... 7, 8, 9, 19

*Vaughn v. Am. Honda Motor Co.*,
  627 F. Supp. 2d 738 (E.D. Tex. 2007) ........................................... *passim*

*In re Volkswagen & Audi Warranty Extension Litig.*,
  89 F. Supp. 3d 155 (D. Mass. 2015) ...................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 23

*Walton v. Franklin Collection Agency*,
  190 F.R.D. 404 (N.D. Miss. 2000) ......................................................... 23

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV 15-2171, 2017 U.S. Dist. LEXIS 77576
  (C.D. Cal. May 21, 2017) ....................................................................... 29

*Welsh v. Navy Fed. Credit Union*,
  No. 5:15-cv-1062, 2018 U.S. Dist. LEXIS 227456
  (W.D. Tex. Aug 20, 2018) ................................................................ 20, 22

*Yaeger v. Subaru of Am., Inc.*,
  No. 1:14-cv-4490, 2016 U.S. Dist. LEXIS 117193
  (D.N.J. Aug. 31, 2016) ........................................................................... 29

**Statutes**

28 U.S.C. § 1715 ................................................................................................................13

**Rules**

Fed. R. Civ. Proc.
    Rule 23 ................................................................................................... *passim*
    Rule 53 ...............................................................................................................13

**Secondary Sources**

William B. Rubenstein, 4 *Newberg on Class Actions* § 11.41 (5th ed. 2014)..............................16

Plaintiffs submit this brief in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement. The Stipulation of Settlement ("Settlement Agreement") is attached as Exhibit A to the Declaration of Timothy G. Blood.

## I.    INTRODUCTION

This Settlement provides substantial benefits to owners and lessees of 2019-2021 Toyota RAV4 Hybrid vehicles (the "Subject Vehicles") that squarely address the issues raised in this litigation. Plaintiffs allege the Subject Vehicles contain a defect that prevents owners from filling up their gas tanks and causes the gas gauges to inaccurately display the amount of fuel. The defect manifests in some, but not all, of the Subject Vehicles and can arise at different times. Under the proposed settlement, whenever a Class Member believes the problem arises, he or she may have their car inspected free of charge and have the gas tank and/or fuel sending unit replaced with an improved gas tank and/or sending unit, again at no charge, for up to 15 years from the date the car was first sold or leased or 150,000 miles, whichever occurs first. If the repair time exceeds 6 hours or the vehicle must stay at the dealership overnight, a loaner vehicle will be provided free of charge. The proposed settlement adds seven (7) years or an additional 50,000 miles to an existing customer service program instituted by Toyota. It also adds new vehicles not previously included in the earlier customer service program. Under the proposed settlement, the customer service program is more inclusive, extended, and improved.

The RAV4 Hybrid is one of Toyota's most popular vehicles. As a hybrid vehicle, it has a gas engine that is assisted by two electric motors. A major selling point is that it uses less gas, which saves owners money, reduces trips to the gas station, and reduces the vehicle's carbon footprint. Another major selling point is the extended driving range owners expect to get. Toyota promotes the RAV4 Hybrid as having a 14.5-gallon fuel tank that gets an average 41/38/40 miles

per gallon (city/highway/combined). However, Plaintiffs and many thousands of consumers nationwide are unable to fill their Subject Vehicles with more than 9.5 to 11-gallons of gasoline. As a result, the defect effectively reduces the size of the gas tank to 11-gallons or less, drastically reducing the driving range.

The New Vehicle Limited Warranty provides coverage for materials and workmanship; however, it only lasts for three years or 36,000 miles, whichever occurs first. As reports about the capacity of the fuel tanks started to increase and numerous RAV4 Hybrid owners began making claims under the New Vehicle Limited Warranty for the faulty fuel tanks, Toyota issued a Customer Support Program (the "Program") to address the issue on May 28, 2020, approximately three and a half months after the Complaint was filed in this case. Discovery revealed Toyota had been working on the Program before the Complaint was filed, but it did not cover all the Subject Vehicles, did not provide a loaner vehicle during repair, and only lasted for eight years or 100,000 miles.

To remedy this problem, the Settlement provides an Extended Customer Support Program[1] (the "Extended Program"). The Extended Program enables all Class Members' Subject Vehicles experiencing the fuel tank issue to have their existing fuel tank replaced free of charge with an improved fuel tank and/or fuel sender gauge unit. To ensure that future fuel tank issues are addressed, the Extended Program provides a free inspection, repair, and replacement for 15 years from the date of First Use of the Subject Vehicle or 150,000 miles, whichever occurs first, on original parts. The Extended Program runs with the vehicle, so future purchasers of the Subject Vehicles will receive the benefit of the Extended Program.

The Settlement also provides an extensive Class Notice Plan to inform Class Members

---

[1]    Capitalized terms used herein are defined in Section II of the Settlement Agreement.

2

about the fuel tank issue and the Extended Program. The Class Notice will be mailed directly to each owner of a Subject Vehicle. It will also be disseminated electronically via website banners and published in newspapers and magazines.

The Settlement was the result of arms-length negotiations among experienced counsel and with the assistance of a highly experienced mediator. It fully accomplishes Plaintiffs' litigation goals—an extended warranty that provides free repair and replacement of any fuel tank experiencing the defect with a new and improved part to avoid future problems. It also eliminates the costs and burden of continued litigation for the Parties and the Court.  As such, Plaintiffs move the Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure as follows: (1) granting preliminary approval of the Settlement; (2) approving and directing notice as set forth in the Class Notice Plan attached as Exhibit 2 to the Settlement; (3) conditionally certifying the Class for purposes of settlement; (4) approving the form and content of the forms of Class Notice attached as Exhibits 3-5 to the Settlement; (5) appointing proposed Class Representatives David Pulkrabek, Barbara Rainey, Andrew Schwab, Wesley Dickman, Whitney Dickman, and Ken Ly as Class Representatives; (6) appointing Timothy G. Blood of Blood Hurst & O'Reardon, LLP, Bonner C. Walsh of Walsh PLLC, Ben Barnow of Barnow and Associates, P.C., and Matthew D. Schelkopf of Sauder Schelkopf LLC as Class Counsel; (7) appointing Jeanne Finegan of Kroll Notice Media Solutions as Settlement Notice Administrator; (8) appointing Patrick A. Juneau as Settlement Special Master; and (9) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes, and the request for attorneys' fees, costs, and expenses, and Class Representative's service awards.

3

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History

#### 1.    The *Pulkrabek* Action

On February 13, 2020, Plaintiffs David Pulkrabek, Barbara Rainey, Andrew Schwab, Wesley Dickman, and Whitney Dickman filed a class action complaint against Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor North America, Inc. ("TMNA") (collectively, "Defendants" or "Toyota") in this Court. Plaintiffs' complaint was filed after an extensive pre-suit investigation by Plaintiffs' counsel that began in January 2020.  This investigation included speaking with members of the potential class, reviewing documents provided by class members, and investigating potential legal claims applicable to the class. Plaintiffs asserted claims under Missouri's consumer protection statute, a claim for common law fraud, express and implied warranty claims, a claim under the MMWA on behalf of a proposed nationwide class, and an unjust enrichment claim arising from the manufacture and sale of 2019-2020 model year Toyota RAV4 Hybrid vehicles equipped with fuel tanks that were allegedly defective.

On June 17, 2020, Toyota filed a motion to dismiss the complaint (ECF No. 9), and Plaintiffs responded by filing a First Amended Complaint ("FAC") (ECF No. 14). After a scheduling conference the Court granted an extension and Toyota filed its motion to dismiss the FAC. In the meantime, the parties filed a Discovery Order and Protective Order, the Court set several deadlines related to class certification, and the parties filed their initial disclosures. On July 10, 2020, Plaintiffs dismissed their claims against Defendant Toyota Motor Corporation.  (ECF Nos. 17-18). On August 13, 2020, Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc., filed their motion to dismiss Plaintiffs' FAC.  (ECF No. 25).  The motion involved numerous complex issues and was hotly contested. For example, Toyota argued that

Plaintiffs do not have standing because they did not suffer economic damages, they were able to continue to use their vehicles, and "disappointed expectations" of the mileage range of the vehicles did not constitute cognizable harm. In response, Plaintiffs claimed, among other arguments, they suffered out-of-pocket loss of more frequent fueling and future repairs. For the express warranty claim, Defendants maintained the warranty did not cover the defect, arguing that any alleged defect was related to the design and not the workmanship of the fuel tank. Defendants also sought dismissal based on the following: they asserted that only TMS was the warrantor; the claims were preempted by the Clean Air Act; the implied warranty allegations failed because the Subject Vehicles were fit for their ordinary purpose; the MMWA claim should be dismissed because Plaintiffs did not utilize Toyota's dispute resolution process; the fraud allegations failed as Toyota had no duty to disclose the defect and no presale knowledge of the issue; the unjust enrichment claim should be dismissed because the warranty is the exclusive remedy; declaratory relief is improper because there were no allegations that Plaintiffs would purchase another Subject Vehicle; and lastly, Toyota argued that Plaintiffs lacked standing to bring a nationwide class.

On March 16, 2021, Magistrate Judge Roy S. Payne issued his Report and Recommendation that Toyota's motion to dismiss the amended complaint be denied in full.  (ECF No. 48.) Toyota filed objections to the Report and Recommendation (ECF No. 49), and the Court overruled the objections and adopted the Report and Recommendation (ECF No. 50).

On June 15, 2021, Plaintiffs filed a Second Amended Complaint adding Ken Ly as a plaintiff and alleging violations of California consumer protection laws, among other amendments.

### 2.    Other Litigation

The proposed Settlement encompasses several other cases arising out of the same alleged defect. The lawyers for the plaintiffs in most of those cases have worked together to coordinate

the actions, work towards settlement, and prevent unnecessary and duplicative litigation.

On January 29, 2020, *Ly* (represented by proposed Class Counsel Blood Hurst & O'Reardon LLP and Barnow and Associates, P.C.) was filed in the Northern District of California, *Ly v. TMS, et al.*, No. 3:20-cv-00640 (N.D. Cal.). *Ly* asserted similar class action claims as the *Pulkrabek* Plaintiffs. To streamline the litigation, *Ly* was voluntarily dismissed without prejudice pending settlement negotiations, and Mr. Ly was recently added to this action in the Second Amended Complaint.

On January 30, 2020, *Boulum* (represented by Plaintiffs' Counsel Capstone Law APC) was filed in the Central District of California, *Boulom, et al. v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 2:20-cv-00999 (C.D. Cal.). The *Boulum* Plaintiffs asserted similar class claims as the *Pulkrabek* Plaintiffs on behalf of a proposed nationwide class. On June 17, 2020, Toyota filed a motion to dismiss the *Boulum* complaint. No further briefing has been filed, and the case has been voluntarily stayed with court approval since October 29, 2020.

On March 6, 2020, *Coleman* (represented by Plaintiffs' Counsel Bleichmar Fonti & Auld LLP) was filed in the Northern District of California, *Coleman v. TMS, et al.*, No. 3:20-cv-01663 (N.D. Cal.) asserting similar class action claims as the *Pulkrabek* Plaintiffs. To streamline the litigation, *Coleman* was voluntarily dismissed without prejudice pending settlement negotiations.

*In Re Toyota RAV4 Hybrid Fuel Tank Litigation*, No. 3:20-cv-00337 (N.D. Cal.) consists of three actions pending in the Northern District of California with Judge Chen presiding. Those cases are: *Fernandez v. Toyota Motor Sales, U.S.A., Inc.*, No. 3:20-cv-00337 (N.D. Cal. Filed Jan. 15, 2020); *DeLuca, et al. v. Toyota Motor Sales, U.S.A., Inc.,* No. 3:20-cv-01218 (N.D. Cal. Filed Feb. 18, 2020); *Ferraguto v. Toyota Motor Sales, U.S.A., Inc.*, No. 4:20-cv-02363 (N.D. Cal. filed Apr. 8, 2020). Again, the plaintiffs alleged similar class claims as the *Pulkrabek* Plaintiffs. This is

the only other action that has ruled on a motion to dismiss. Judge Chen largely granted Toyota's motion with several claims being dismissed without leave to amend. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, No. 20-cv-00337, 2021 U.S. Dist. LEXIS 69643, at *129 (N.D. Cal. Apr. 9, 2021) (dismissing express and implied warranty and nationwide unjust enrichment claims without leave to amend). The litigation is ongoing.

### B.    The Warranties at Issue

There are three warranties at issue: a New Vehicle Limited Warranty, the Customer Support Program, and the Extended Customer Support Program that is provided by the proposed Settlement.

The New Vehicle Limited Warranty provides coverage for defects in material or workmanship for 3 years or 36,000 miles, whichever occurs first. As reports about the capacity of the fuel tanks started to increase and numerous RAV4 Hybrid owners begin making claims under the New Vehicle Limited Warranty, Toyota issued a Customer Support Program on May 28, 2020. The Customer Support Program included RAV4 Hybrid model years 2019-2020 and provided repair and replacement of the fuel tank and/or fuel sender gauge unit for eight years from the date of First Use or 100,000 miles, whichever occurs first.

This Settlement provides an Extended Customer Support Program which covers effected RAV4 Hybrid model years 2019-21 and is valid for 15 years from First Use or 150,000, whichever occurs first, on original parts (*see* "§ III.B below). It provides for a free inspection, repair, and replacement of the fuel tank and/or fuel sender gauge unit if the parts fail inspection, and a free Loaner Vehicle for repairs lasting over six hours.

### C.    Settlement Negotiations

The Settlement was reached after more than a year of arm's-length negotiations assisted

by nationally recognized mediator, Patrick A. Juneau. Declaration of Timothy G. Blood in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Blood Decl."), ¶ 20. These discussions included a continuation of settlement discussions that first began shortly after the cases were filed, when counsel for plaintiff Ly reached out to Toyota and first began obtaining information needed to evaluate the case and discussing settlement. *Id.* Since October 2020, the Parties have held more than ten settlement meetings by videoconference or telephone. *Id.*, ¶ 22. Mediator Juneau assisted the Parties in three of the meetings. *Id.*

Mr. Juneau is a highly experienced mediator and court-appointed Special Master. He has mediated over 4,000 cases, has been appointed as the designated mediator or Special Master by numerous federal and state courts, and was an important component to reaching agreement. *Id.*, ¶ 21.

Throughout the negotiations, the Parties discussed factual issues relating to the alleged defect, the existing Customer Support Program and ways to improve it, additional information needed by Plaintiffs and their counsel to fully evaluate the defect, information relating to the vehicle gas tank inspections, and various other issues concerning the operation of how a settlement would work, such as issues related to vehicle inspections, the inclusion of salvage vehicles, and providing loaner vehicle during repairs provided under the Extended Customer Support Program. *Id.*, ¶ 23.

On October 23, 2020, the Parties participated in their first negotiation meeting with mediator Juneau. *Id.* ¶ 22. After Toyota provided additional information, the Parties met again on November 12, 2020 by videoconference, again with mediator Juneau. *Id.* The next week the Parties held a telephone conference with the mediator. *Id.* At that meeting, Toyota agreed to produce additional documents concerning the root cause and solutions to the gas tank issue. *Id.*

Over the following months, the Parties continued to negotiate the written terms and details of the Settlement Agreement and exchanged numerous drafts of settlement documents. *Id.*, ¶¶ 22-23. The attorneys' fees and expenses and Class Representatives' service awards were only addressed after the Parties reached an agreement in principle on the material terms of the Settlement Agreement. *Id.*, ¶ 23. Class Counsel believe the Settlement represents a very good outcome that addresses the problems at issue and readily meets the fair, reasonable and adequate standard. *Id.*, ¶ 24.

    **D.**    **Discovery Efforts**

Toyota responded to Plaintiffs' discovery requests, including by providing confirmatory discovery to Class Counsel, including the production of over 100,000 pages of internal Toyota documents, which have been reviewed and considered as part of the negotiation process. *Id.*, ¶ 25.

The discovery provided valuable insight into the cause and prevalence of the defect, including the repair procedure which remedies the defect and is part of the Settlement benefits. *Id.*, 26. This discovery included highly relevant documents related to the defect, such as Field Technical Reports describing the defect and diagnostic steps, memorandum reporting the rates of fuel tank failures, customer complaints, technical information exchanged between Toyota and California Air Resources Board and the Environmental Protection Agency, numerous test results duplicating the fuel tank deformation, market impact reports, internal technical bulletins describing the repair procedure and evaluation methods, and reports detailing the process which confirms the fuel tank is functioning properly. *Id.* The discovery provided Class Counsel with ample information to gauge the strength and weaknesses of Plaintiffs' claims and the probability of success on the merits. *Id.*

## III.  THE SETTLEMENT

### A.  The Settlement Class

The proposed Settlement Class is defined as:

All persons, entities or organizations who, at any time as of the entry of the Preliminary Approval Order, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class as provided in the Settlement Agreement.

Subject Vehicles consist of model year 2019, 2020, and 2021 Toyota RAV4 Hybrid vehicles in which the fuel gauge indicates that the fuel tank may not be able to be filled to its expected capacity. A list of the vehicles included in the Settlement are included in Exhibit 8 of the Settlement Agreement. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly exclude themselves from the Class.

### B.  The Settlement Relief

Under the Settlement, Toyota will offer an Extended Customer Support Program ("Extended Program") to all Class Members. Settlement Agreement, § III. It will pay all settlement administration costs, including Class Notice, and any award of attorneys' fees, expenses, and Class Representative service awards. *Id.*, §§ IV, VIII. The Extended Program provides all Class

Members who believe that their fuel tank is experiencing the fuel tank capacity issue: (1) free inspections of the fuel tank and/or fuel sender gauge unit; (2) if a problem exists, repair and replacement of the fuel tank and/or fuel sender gauge unit with a new improved fuel tank and/or fuel sender gauge unit; and (3) a complimentary Loaner Vehicle if the repair exceeds six hours or the Subject Vehicle is required to remain at the dealership overnight. The Extended Program will increase the original Customer Support Program by seven (7) years and 50,000 miles for a total coverage period of 15 years from the date the Subject Vehicle was originally sold/leased or 150,000 miles, whichever occurs first, on original parts. *Id.*, § III. The Extended Program includes RAV4 Hybrid model years 2019-21. *Id.*, §§ II.A.29, III.

     C.     **Notice to the Class and Settlement Administration**

The cost of Class Notice and Settlement administration will be paid by Toyota. *Id.*, § IV. The Parties have developed a Class Notice Plan with the assistance of Jeanne Finegan of Kroll Notice Media Solutions (the "Settlement Notice Administrator"), a firm specializing in class action notice plans. *Id.*, Ex. 6 (Settlement Notice Administrator's Declaration). The Class Notice Plan informs Class Members of their rights and includes a comprehensive, multi-faceted plan for delivery of notice by direct mail, a settlement website, and targeted publications. *See id.*, Ex. 2 (Notice Plan).

Direct Mail Notice, which is the method by which most Class Members will receive notice, will be sent by U.S. mail to the current registered owners or lessees of the Subject Vehicles. *Id.*, Ex. 2 at 2. Toyota has agreed to identify the VIN numbers for the Subject Vehicles utilizing R.L. Polk & Co., a specialized auto data analyst firm, to identify current names and addresses for Class Members. *Id.* The Direct Mail Notice will be sent by the Settlement Notice Administrator and will inform Class Members on how to access the Long Form Notice via the settlement website, mail,

or a toll-free telephone number. *Id.*, § IV.A. The Settlement Notice Administrator will re-mail any returned notices with a forwarding address and for returned notices without a forwarding address, the Settlement Notice Administrator will utilize an address updating process and promptly mail the Direct Mail Notice to any newly identified addresses. *Id.*

The proposed Publication Notice contains easy to understand language and describes the alleged defect, provides a link to the settlement website, and identifies the Subject Vehicles, the benefits of the Settlement, opt-out and objection procedures, and details about the Court's fairness hearing. *Id.*, § IV.B; s*ee also id.*, Ex. 5 (Publication Notice). To increase awareness of the Settlement, the Settlement Notice Administrator will utilize electronic publication methods such as targeted internet banner notifications and other publication methods such as newspapers, magazines, and other media outlets to notify potential Class Members about the Settlement. *Id.*, Ex. 2 (Notice Plan) at 2-4.

A Settlement Website will be established by the Settlement Notice Administrator and will inform Class Members of the terms of the Settlement, their rights, dates and deadlines, a Class membership VIN lookup tool to easily determine if they are part of the Class, and related information such as the Publication Notice, Long Form Notice, Frequently Asked Questions with answers, important dates, and select Court documents (e.g., the Complaint and filings in support of preliminary and final approval). *Id.* at 2; *see also id.*, § IV.C.

The Long Form Notice is modeled after the Federal Judicial Center's class notice guidelines. *See id.,* Ex. 3. The proposed Long Form Notice is carefully written in plain language and satisfies due process. It includes: (1) basic information about the litigation; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out

or object to the Settlement; (5) an explanation that any claims against Toyota related to the action will be released if the Class Member does not opt-out; (6) the names of Class Counsel and information regarding attorneys' fees, expenses, and the service awards; (7) the Final Approval Hearing date; (8) an explanation that each Class Member has the right to appear at the Final Approval Hearing; and (9) the settlement website address and a toll-free number where additional information can be obtained. *Id.* The Long Form Notice will be available on the Settlement website and will be sent by first-class mail to those who request it in writing or through the toll-free telephone number. *Id.*, § IV.D.

Lastly, the Class Action Fairness Act Notice will be sent by the Settlement Notice Administrator to each appropriate State and Federal official and will comply with 28 U.S.C. § 1715. *Id.,* Ex. 2 at 4; *see also id.*, § IV.G.

### D.     Settlement Special Master

The Parties request that Patrick A. Juneau serve as Settlement Special Master pursuant to Federal Rule of Civil Procedure 53. *See id.*, Ex. 7 (Settlement Special Master's Declaration and CV). Mr. Juneau is a well-respected mediator and Special Master and assisted the Parties in forming the Settlement. *Id.; see also* Blood Decl., ¶¶ 21, 32.

The Settlement Special Master will oversee the Parties' efforts to implement the terms of the Settlement Agreement, including the Extended Consumer Support Program. Settlement Agreement, § IV.I. The Settlement Special Master will mediate any issues that may arise between Class Counsel and Toyota's counsel relating to the Settlement. *Id.* Further, the Settlement Special Master may conduct *ex parte* discussions with the Parties or the Court, address any issues raised by Class Members that are not resolved by the Settlement Notice Administrator, and provide any requested information to the Court. *Id.* Toyota will pay for the Settlement Special Master's

services. *Id.*, IV.I.7.

### E.    Attorneys' Fees, Costs, and Class Representative Service Awards

In accordance with best practices, the attorneys' fees and expenses and Class Representatives' service awards were not addressed until after the Parties reached an agreement on the substantive terms of the Settlement. *Id.*, § VIII.A. The Settlement provides, subject to Court approval, service awards up to $2,500 for each Class Representative and Class Counsel's fees, costs, and expenses up to $1,100,000. *Id.*, §§VIII.B.-C. Class Counsel's motion for attorneys' fees and expenses will be filed before the deadline to object to the Settlement. The Settlement is not contingent upon the Court approving the application for attorneys' fees, expenses, or Class Representative service awards. *Id.*, § VIII.E.

### F.    The Settlement Release

In consideration for the Settlement, Class Members who have not opted out of the Settlement will release any Toyota entity from all claims related to and in connection with the Subject Vehicles' fuel tanks and associated parts that could have been alleged in the Second Amended Complaint. *Id.*, § VII. Class Members are not releasing claims for personal injury, wrongful death, or physical property damage arising from the Subject Vehicles. *Id.* The proposed Final Order reflects this Release. *Id.*, Ex. 10.

## IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Legal Standard and Six-Factor Test

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2nd Cir. 1998); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981).[2] The "court should

---

[2]    Quotations, citations, and brackets are omitted unless otherwise noted.

approve a settlement if it is fair, reasonable, and adequate, and consistent with the public interest." *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007). There is a strong presumption that the compromise is fair and reasonable. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 n.31 (5th Cir. 1983) ("[N]either the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute.").

At this juncture, Plaintiffs request that the Court preliminarily approve the Settlement so that Notice may be sent to the Class. Rule 23(e) sets forth a two-step process for preliminary and final approval. "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

Although Plaintiffs currently seek preliminary approval, analysis of the Fifth Circuit's and Rule 23(e)'s factors in granting final approval demonstrate that the Settlement is fair, reasonable, and adequate. The six factors as articulated by the Fifth Circuit to consider at final approval are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the probability of plaintiffs' success on the merits; (4) the range of possible recovery compared to the probability of plaintiffs' success on the merits; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

The *sine qua non* of an approvable proposed settlement is that it be "fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394

F.3d 296, 301 (5th Cir. 2004).  A finding of fairness is bolstered where, as here, the proposed Settlement was reached only after zealous, arms-length negotiations. Blood Decl., ¶¶ 20-23; William B. Rubenstein, 4 *Newberg on Class Actions* § 11.41 (5th ed. 2014) (fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's length bargaining, among other considerations).

Moreover, "[a]lthough a more rigorous examination of the Settlement Agreement is required following a formal fairness hearing, the Court need only conduct a preliminary fairness evaluation at this stage of the proceedings." *Telles v. Midland Coll.*, No. MO:17-CV-0083, 2018 U.S. Dist. LEXIS 227812, at *8 (W.D. Tex. Apr. 30, 2018). Preliminary approval is appropriate where "'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval.'" *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993)) (quoting *Manual for Complex Litigation, Second* § 30.44 (1985)).

The proposed Settlement meets all the criteria for preliminary approval. As illustrated below, the proposed Settlement is within the range of possible approval and provides important benefits to the Settlement Class relative to the potential costly and uncertain outcome of continued litigation. Further, the Settlement is not the product of collusion or overreaching to the contrary, the proposed Settlement is the product of protracted and extensive arm's-length negotiations conducted by experienced counsel before an experienced mediator. Blood Decl., ¶¶ 20-23.

### B.    The Settlement Satisfies the Standards for Preliminary Approval

#### 1.    There Is No Fraud or Collusion

"The Court may presume that no fraud or collusion occurred between counsel, in the

absence of any evidence to the contrary." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). "[C]ourts may presume a proposed settlement is fair and reasonable[, and lacking fraud or collusion,] when it is the result of arm's-length negotiations." *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 287 (W.D. Tex. 2007). "The involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017).

The Settlement is the result of a hard-fought litigation including a contentious motion to dismiss involving numerous legal issues. *See* ECF No. 48 (Magistrate Judge Payne Report and Recommendation (adopted by the Court) delineating six central allegations challenged by Toyota). Arms-length Settlement terms were negotiated by senior members of the Parties' counsel with the assistance of a neutral and experienced mediator that lasted for over a year with at least ten meetings and numerous drafts of settlement documents. Blood Decl., ¶¶ 20, 22. Further, the attorneys' fees and expenses and Class Representatives' service awards were not addressed until after the Parties reached an agreement in principle on the material terms of the Settlement. *Id.*., ¶ 23. This factor weighs in favor of preliminary approval.

## 2.     The Complexity, Expense, and Likely Duration of the Litigation

The next factor considers the complexity, expense, and likely duration of the litigation. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651.

This case involves twelve counts (including state consumer protection laws and a federal MMWA claim), two defendants, six named Plaintiffs, and host of technical issues which will inevitably involve a costly and lengthy "battle of the experts." *See, e.g., In re Fannie Mae Sec.,*

17

*Derivative, & ERISA Litig.*, 4 F. Supp. 3d 94, 105 (D.D.C. 2013) (granting final approval and noting trial "would have involved a costly 'battle of the experts'"); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) (granting final approval and noting continued litigation "would inevitably have entailed a 'battle of the experts,' which would have been costly and which would have taken significant time"); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2017 U.S. Dist. LEXIS 214427, at *14-15 (E.D. Tex. Dec. 18, 2017) (approving class settlement and noting that "damage determination would be a battle of the experts even if Plaintiffs successfully establish liability").

Further, class certification, summary judgment, *Daubert* motions, jury instructions, and motions *in limine* will be complex and costly for both Parties. For example, Toyota would contest certification of the proposed nationwide class, the evidence presented by the Parties as to the defect will undoubtedly create large expert expenses, and attorneys' fees and costs will continue to grow. Even if Plaintiffs were successful, Toyota would likely appeal any adverse decisions to the Fifth Circuit, presenting additional risks and further delay. *See*, *e.g.*, *Garza v. Sporting Goods Props*., No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *56 (W.D. Tex. Feb. 6, 1996) (approving class settlement and observing "if the plaintiffs were to continue with the litigation and prevail at trial, and even if the damages awarded were in excess of the amount of the settlement obtained, there is no doubt lengthy appeals would follow as would enormous costs and expenses"). The risk and expense of continued litigation weighs in favor of compromise.

### 3.    The Probability of Plaintiffs' Success on the Merits

"In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287. The most important factor in assessing a class settlement is the

probability of the plaintiffs' success on the merits. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "The court, however, must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172.

Plaintiffs' success on the merits is no guarantee. For example, in the actions pending in the Northern District of California, the court dismissed large portions of plaintiffs' case and limited the scope of the class, all on a motion to dismiss. *See In re Toyota RAV4*, 2021 U.S. Dist. LEXIS 69643, at *25 (dismissing express and implied warranty claims, affirmative misrepresentation allegations, and numerous consumer protection claims, while stating it would not certify a nationwide class).

Even if Plaintiffs prove liability, Toyota would assert the Court could not award damages to Class Members for a product which has yet to fail. *See Garza*, 1996 U.S. Dist. LEXIS 2009, at *58. Further, damages in this litigation are not so concrete and the Class may be awarded with much less than the Settlement provides.

The risk, expense, complexity, and duration of the case if litigation continues weighs heavily in favor of settlement approval. The Settlement provides substantial benefits to Class Members—it provides free repairs of any issues related to the defect for an additional seven (7) years or 50,000 miles. The guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement. *DeHoyos*, 240 F.R.D. at 291-92.

> 4.    **The Settlement Benefits in Comparison to the Range of Possible Recovery**

A settlement must take "into account the uncertainty and risks involved in litigation" as well as "the strength of the claims and possible defenses." *Collins v. Sanderson Farms, Inc.*, 568

F. Supp. 2d 714, 727 (E.D. La. 2008); *see also Klein*, 705 F. Supp. 2d at 656. "In determining whether a settlement is fair given the potential range of recovery, the Court is guided by 'the fact that a proposed settlement only amounts to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Kemp v. Tower Loan of Miss., LLC*, No. 3:15-CV-499, 2017 U.S. Dist. LEXIS 209085, at *18 (S.D. Miss. Dec. 20, 2017) (quoting *Parker*, 667 F.2d at 1210 n.6). "When considering the possible range of recovery, a court should keep in mind that 'compromise is the essence of settlement.'" *Welsh v. Navy Fed. Credit Union*, No. 5:15-cv-1062, 2018 U.S. Dist. LEXIS 227456, at *36 (W.D. Tex. Aug 20, 2018) (quoting *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 850 (E.D. La. 2007)).

Here, the Settlement provides a remedy that fits the problem: the replacement of any defective fuel tank and/or fuel sender gauge unit for an extended period. The Extended Customer Support Program also covers 2021 vehicles and provides a free Loaner Vehicle, unlike the current program. Class Notice will directly inform every member of the Class. Through Toyota's investigation and Plaintiffs' Counsel's review of discovery, it became known that the fuel tank defect may be the result in variation of the fuel tank shape and fuel sender gauge unit shape. The Settlement directly addresses the problem, providing relief that is more tailored than a litigated judgment could deliver.

The financial risk of these costs is placed upon Defendants, not the Class, and there is no cap on the aggregate amount of repair expenses. In exchange, Defendants will receive a Release of all claims related to the Subject Vehicles' fuel tanks. Settlement Agreement, § VII.

As such, the Settlement "recovers for the class the benefit allegedly disgorged from the class" by Toyota. *Vaughn*, 627 F. Supp. 2d at 747; *see also In re Volkswagen & Audi Warranty*

*Extension Litig.*, 89 F. Supp. 3d 155, 169 (D. Mass. 2015) (ruling a "consumer derives benefit from the fact of coverage even when nothing goes wrong."). Considering the many uncertainties surrounding the range of possible recovery (and the possibility of no recovery whatsoever), the Settlement benefits in comparison are fair, reasonable, and adequate.

      **5.**      **The Stage of the Proceedings and the Amount of Discovery Completed**

      The purpose of this factor is to ensure there is not an imbalance of information between the parties and to prevent uneducated guesswork. *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211. Formal discovery is not necessary. *Id.*; *Newby*, 394 F.3d at 306 ("The overriding theme of our caselaw is that formal discovery is not necessary [for Settlement] as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement.")

      Here, Plaintiffs have reviewed and analyzed over 100,000 pages of documents produced by Toyota. This targeted discovery included highly relevant documents related to the alleged defect such as Field Technical Reports describing the issue and diagnostic steps, memorandum reporting the rates of fuel tank failures, customer complaints, technical information exchanged between Toyota and California Air Resources Board and the Environmental Protection Agency, numerous test results duplicating the fuel tank deformation, market impact reports, internal technical bulletins describing the repair procedure and evaluation methods, reports detailing the process which confirms the fuel tank is functioning properly, and documents indicating that the defect is due in part to use of the fuel tank. Plaintiffs have sufficient information to gauge the strength and weaknesses of their claims and the probability of success on the merits. Blood Decl., ¶ 26. This is all that is required. *Evans v. Greenlaw*, No. 3:16-cv-635, 2018 U.S. Dist. LEXIS 80569, at *12 (N.D. Tex. May 14, 2018) (collecting cases). Further, to confirm all that Plaintiffs

have learned, Toyota will also provide an engineer to answer Plaintiffs' Counsel's questions and confirm the information contained within the document production.

### 6.    The Opinion of Experienced Class Counsel

Lastly, in evaluating the fairness of consideration offered in settlement, courts should give significant weight to the negotiated resolution of the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Absent fraud or collusion, the court "should be hesitant to substitute its own judgment for that of counsel." *Id*. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id*.

Plaintiffs' Counsel submit that the Settlement is fair, reasonable, and adequate based upon: (i) their extensive experience with other consumer class actions in this and other courts (ii) their hands-on involvement in this litigation; (iii) their knowledge of the information that they reviewed in this case; (iv) their participation in arm's-length and adversarial negotiations in the mediation with a highly regarded and experienced mediator; and (v) their conversations with Class Members who have called and emailed their offices. *See Welsh*, 2018 U.S. Dist. LEXIS 227456, at *42; Blood Decl., ¶¶ 37-40; *id*., Exs. B-E (Resumes).

## V.    THE PROPOSED CLASS SHOULD BE CERTIFIED

Certification of a settlement class is proper if the four requirements in Rule 23(a) and one of the subsections of Rule 23(b) are met. *McNamara*, 214 F.R.D. at 428. The court should evaluate certification in the context of the settlement because questions regarding the manageability of the case at trial are no longer relevant. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, preliminary approval is proper because it "serves the primary goals of Rule 23, namely economies of time, effort, and expense without sacrificing fairness" to the settlement class. *Telles*, 2018 U.S. Dist. LEXIS 227812, at *8.

### A.    Rule 23(a) Requirements Are Satisfied

#### 1.    The Settlement Class Is Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The Settlement Class consists of over a hundred thousand consumers. Settlement Agreement, Ex. 2 (Notice Plan) at 2. Thus, it would be impracticable to join all members of the Settlement Class, and numerosity is met. *See, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (100 to 150 members "is within the range that generally satisfies the numerosity requirement); *Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (317 members "is large enough to meet the numerosity requirement").

#### 2.    There Are Common Questions of Law and Fact

To satisfy Rule 23(a)(2) commonality, any common issue "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do." *Id*. "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d 620 at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)). "The Fifth Circuit has held that the threshold of commonality is not a high one." *Walton v. Franklin Collection Agency*, 190 F.R.D. 404, 408 (N.D. Miss. 2000). Accordingly, class treatment of consumer claims is proper when the harm alleged is a defective product. *Shaw v. Toshiba Am. Info.*

23

*Sys.*, 91 F. Supp. 2d 942, 952 (E.D. Tex. 2000).

Here, a classwide proceeding will generate common answers to the primary questions in this case, namely, whether the Subject Vehicles were materially defective when sold, and whether Defendants had a duty to disclose that material defect. Other common questions include whether Defendants' marketing of the Subject Vehicles was likely to deceive or mislead consumers and whether Defendants violated any applicable warranties. Because Plaintiffs have identified the existence of a product defect and a common scheme to defraud customers, commonality is satisfied. *See Vaughn.*, 627 F. Supp. 2d at 745.

### 3.    The Class Representatives' Claims Are Typical

Rule 23(a)(3) typicality is satisfied where the class representatives' claims arise from a common course of conduct and are based on similar legal theories as absent class members. *Vaughn*, 627 F. Supp. 2d at 745. "[E]ven if there are factual distinctions between the claims of the named plaintiffs and those of other class members[,]" typically may be met. *Bywaters v. U.S.*, 196 F.R.D. 458, 467 (E.D. Tex. 2000). Typicality seeks to protect conflicts between the named plaintiffs' interests and the class. *Mullen*, 186 F.3d at 625-26.

Typicality is met here, as Plaintiffs and the proposed Settlement Class assert the same claims (e.g., breach of warranties) arising from the same course of conduct (e.g., the alleged defect) and seek the same relief (e.g., extended warranty coverage) for the same alleged wrongful conduct.

### 4.    The Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to prosecute the action, and (ii) the interests of the proposed class representatives do not conflict with the interests of the class. *See Morrow v. Wash.*, 277 F.R.D. 172, 195 (E.D. Tex.

2011). The adequacy of the proposed representatives and class counsel is presumed in the absence of specific proof to the contrary. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005).

Class Counsel are qualified and experienced in class action litigation, including in prosecuting consumer protection cases involving automobile defects. *See* Blood Decl., Exs. B-E (Resumes). Additionally, the interests of the Class Representatives and Class Members are fully aligned and conflict free: they allege the same claims, seek redress from the same conduct, and there are no disabling conflicts of interest. *See* ECF No. 48 at 8-9 (ruling named plaintiffs have standing because they suffered the same defect and have been similarly injured). Further, the Class Representatives can protect, have protected, and will continue to protect, the interests of absent class members. Blood Decl., ¶ 36.

### B.   Rule 23(b) Requirements Are Satisfied

Rule 23(b) is satisfied if (i) common questions predominate over individual questions and (ii) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615.

#### 1.   Common Questions Predominate

"Predominance examines whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vaughn*, 627 F. Supp. 2d at 745-46 (quoting *Amchem*, 521 U.S. at 623). The predominance test is readily met in cases alleging consumer fraud. *Amchem*, 521 U.S. at 625.

Here, there is a single product, the Subject Vehicles, and "[e]veryone's loss flows from a single source"—the purchase of the Subject Vehicles with alleged defective fuel tanks. *See id.* at 957-58. The central issue for every claimant is whether the Subject Vehicles contain a material

defect. This primary issue predominates and constitutes the heart of the litigation because it would be decided in every trial brought by individual members of the Class and can be proven or disproven with the same classwide evidence. Under these circumstances, predominance is satisfied. *See Vaughn*, 627 F. Supp. 2d at 746 (citing *Amchem* and finding predominance was readily met because "[a]ll of the plaintiffs' claims arise out of a single course of conduct . . . that odometers in Honda and Acura vehicles overstate mileage"); *see also Shaw*, 91 F. Supp. 2d at 987 (holding "[t]he dominating common issues are the application of the express warranty made to all class members").

### 2.    Class Treatment Is Superior to Other Forms of Adjudication

"Class actions are superior when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy." *Id*. (citing *Mullen*, 186 F.3d at 627). Because this is a settlement class, issues relating to the manageability of a class trial are irrelevant. *Vaughn*, 627 F. Supp. 2d at 746 (citing *Amchem*, 521 U.S. at 620).

A class action is the only viable method to adjudicate the claims at issue and provides the only viable method of resolving the dispute. Each individual Class Member's damages are too small to justify individual litigation. It is neither economically feasible nor judicially efficient for Class Members to pursue their claims against Defendants on an individual basis. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Moreover, settlement removes any potential difficulties in managing the trial as a class action. *Id*. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). The requirements

of Rule 23(b)(3) are satisfied.

## VI.    THE CLASS NOTICE PLAN SHOULD BE PRELIMINARILY APPROVED

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). "[R]eceipt of actual notice by all class members is required neither by Rule 23 nor the Constitution." *DeHoyos*, 240 F.R.D. at 296 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539 (N.D. Ga. 1992)).

The threshold class notice test is whether the distribution method is "reasonably calculated" to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt-out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The court retains discretion over the mechanics of the notice process, which are subject only to the broad "reasonableness" standards imposed by due process. *Id.* at 314-15. In this Circuit "it is not required that class members made cognizant of every material fact that has taken place prior to the notice." *In re Deepwater Horizon*, 739 F.3d 790, 819 (5th Cir. 2014) (cleaned up).

In accordance with the Federal Judicial Center's class notice guidelines, the proposed Long Form Notice is carefully written in plain language and satisfies due process. *See* Settlement Agreement, Ex. 3 (Long Form Notice). The contents of the proposed Long Form Notice mirror the Federal Judicial Center's model class action notices. *See DeHoyos*, 240 F.R.D. at 303 (approving class notices that are "consistent with the illustrative notices promulgated by the Federal Judicial Center"); Fed. R. Civ. P. 23 Advisory Committee Notes (2003). The Long Form Notice provides Class Members with sufficient information written in plain English to make an informed decision on whether to object to or opt-out of the Settlement. *See* Settlement Agreement, Ex. 3. As such, it satisfies the content requirements of Rule 23.

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements. As discussed in § III.C above, the Class Notice Plan is multifaceted. It has been approved by federal courts in similar automotive defect class settlements. *See* Settlement Agreement, Ex. 6 (Settlement Notice Administrator's Declaration), ¶ 7 (declaring Class Notice Plan is substantially similar to court-approved notice plans in *Simerlein et al., v. Toyota Motor Corporation*, Case No. 3:17-cv-01091-VAB (D. Conn. 2019) and *Warner v. Toyota Motor Sales, U.S.A. Inc.*, Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017). The Settlement Notice Administrator will provide Notice directly to the Class by mail and will be supplemented with Publication Notice via the internet banner notifications and more tradition methods such as magazines and newspapers. *See* Settlement Agreement, Ex. 2 (Class Notice Plan). Notice also will be posted on the Settlement Website. *Id.* A toll-free telephone line will be publicized with pre-recorded information and live operators. *Id.*

The contents and dissemination of Class Notice Plan constitutes the best notice practicable and fully complies with Rule 23's requirements. *See Id.*, Ex. 6 (Settlement Notice Administrator Declaration), ¶ 7.

## VII.  PROPOSED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS

The Parties request that the Court designate David Pulkrabek, Barbara Rainey, Andrew Schwab, Wesley Dickman, Whitney Dickman, and Ken Ly as Class Representatives for the Settlement Class. As discussed above, Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

Rule 23(g)(1) also requires the Court to appoint class counsel to represent the interests of the Settlement Class. Plaintiffs request that Timothy G. Blood of Blood Hurst & O'Reardon, LLP, Bonner C. Walsh of Walsh PLLC, Ben Barnow of Barnow and Associates, P.C., and Matthew D.

Schelkopf of Sauder Schelkopf LLC be appointed as Class Counsel. Proposed Class Counsel are experienced and well equipped to vigorously, competently, and efficiently represent the Settlement Class. *See* Blood Decl., Ex. B-E; *see also Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171, 2017 U.S. Dist. LEXIS 77576, at *42 (C.D. Cal. May 21, 2017) (awarding fees to class counsel including Blood Hurst & O'Reardon LLP and Barnow and Associates, P.C.*); Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 U.S. Dist. LEXIS 131198, at *25 (N.D. Ohio Nov. 11, 2011) (appointing Blood Hurst & O'Reardon class counsel and noting the firm has "extensive class-action experience, including in consumer-protection cases"); *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, No. 9-CV-852, 2017 U.S. Dist. LEXIS 142470, at *14-15 (E.D. Wis. Aug. 8, 2017) (appointing Ben Barnow class counsel and noting he is "knowledgeable, capable, and financially committed" to see litigation through resolution); *Fath v. Am. Honda Motor Co.*, No. 18-CV-1549, 2019 U.S. Dist. LEXIS 215090, at *7 (D. Minn. Dec. 13, 2019) (preliminarily approving settlement and noting Sauder Schelkopf LLC is "qualified, experienced, and able to conduct the litigation"); *Yaeger v. Subaru of Am., Inc.*, No. 1:14-cv-4490, 2016 U.S. Dist. LEXIS 117193, at *19 (D.N.J. Aug. 31, 2016) (approving class settlement and noting Matthew Schelkopf is "experienced class action counsel"); *In re Kia Engine Litig.*, No. 8:17-cv-00838 (C.D. Cal. May 10, 2021) (granting final approval of settlement with Bonner Walsh and Matthew Schelkopf as class counsel).

## VIII.   THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates are based on when preliminary approval of the Settlement is granted. The relevant settlement-related dates are:

| EVENT | DEADLINE |
|---|---|
| Dissemination of Class Notice | Within 45 calendar days from the entry of the Preliminary Approval Order |
| Briefs in support of award of attorneys' fees and | 130 calendar days after Preliminary Approval |

| reimbursement of expenses | Order |
|---|---|
| Deadlines for objections and opt-outs | 160 calendar days after Preliminary Approval Order |
| Briefs in support of final approval | 185 calendar days after Preliminary Approval Order |
| Briefs in response to objections and in further support of final approval and attorneys' fees | 200 calendar days after Preliminary Approval Order |

The Parties believe 45 days are needed to disseminate Class Notice because Class Members addresses are obtained by R.L. Polk & Co. from state departments of motor vehicles. R.L. Polk informs us that this process is significantly delayed because of the COVID pandemic. Accordingly, the Parties request the Court schedule the Final Approval Hearing no sooner than 210 days after entry of the Preliminary Approval Order, or as soon thereafter as the Court's schedule permits.

## IX.    CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) approve and direct Notice as set forth in the Class Notice Plan; (3) conditionally certify the Settlement Class; (4) approve the form and content of the proposed forms of Class Notice; (5) appoint Plaintiffs David Pulkrabek, Barbara Rainey, Andrew Schwab, Wesley Dickman, Whitney Dickman, and Ken Ly as Class Representatives; (6) appoint Timothy G. Blood of Blood Hurst & O'Reardon, LLP, Bonner C. Walsh of Walsh PLLC, Ben Barnow of Barnow and Associates, P.C., and Matthew D. Schelkopf of Sauder Schelkopf LLC as Class Counsel; (7) appoint Jeanne Finegan of Kroll Notice Media Solutions as Settlement Notice Administrator; (8) appoint Patrick A. Juneau as Settlement Special Master; and (9) adopt the proposed schedule including setting a date for the Final Approval Hearing.

Respectfully submitted,

Dated: June 21, 2021

By:   */s/ Bonner C. Walsh w/ permission Charles Everingham IV*

Bonner C. Walsh (TX Bar No. 24051766)
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Tel: 541/359-2827
866/503-8206 (fax)
bonner@walshpllc.com

Timothy G. Blood (*pro hac vice*)
Jennifer L. MacPherson (*pro hac vice*)
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
jmacpherson@bholaw.com

Ben Barnow (*pro hac vice*)
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
aparkhill@barnowlaw.com

Matthew D. Schelkopf (*pro hac vice*)
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: 610/200-0581
610/421-1326 (fax)
mds@sstriallawyers.com

Charles Everingham IV (TX Bar No. 00787447)
Claire Henry (TX Bar No. 24053063)
**WARD, SMITH & HILL, PLLC**
P.O. Box 1231
Longview, TX 75606
Tel: 903/757-6400
903/757-2323 (fax)
ce@wsfirm.com
claire@wsfirm.com

Craig R. Heidemann (*pro hac vice*)
Nickolas W. Allen (*pro hac vice*)
**DOUGLAS, HAUAN & HEIDEMANN, PC**

31

901 E. St. Louis, Suite 1200
Springfield, MO  65806
Tel: 417/887-4949
417/887-8618 (fax)
craig@dhhlawfirm.com
nick@dhhlawfirm.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2021, a copy of the foregoing document was electronically filed with the United States District Court, Eastern District of Texas, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on June 21, 2021.

*s/  Bonner C. Walsh w/ permission Charles Everingham IV*
Bonner C. Walsh

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule CV-7(i), I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h), and that the motion is unopposed.

*/s/ Bonner C. Walsh w/ permission Charles Everingham IV*
Bonner C. Walsh